# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PAUL F. MEYERS,

               Plaintiff,

  v.

CHRISTINA KISHIMOTO,
SUPERINTENDENT OF SCHOOLS;
NATASHA DURANT, EXECUTIVE
DIRECTOR OF HUMAN RESOURCES;
JENNIFER ALLEN, CHIEF TALENT
OFFICER; KEVIN McCASKILL,
DIRECTOR OF SCHOOL DESIGN AND
PROGRAMMING; MILLY RAMOS,
LABOR RELATIONS OFFICER; JANET
SERANNO, STAFFING SPECIALIST; and
CITY OF HARTFORD,

               Defendants.

Civil Action No.
3:14 - CV - 535 (CSH)

JULY 1, 2015

## RULING ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

**HAIGHT, Senior District Judge:**

## I.  BACKGROUND

Plaintiff Paul F. Meyers brings this action pursuant to 42 U.S.C. § 1983 and Connecticut

common and statutory law for wrongful termination of his  tenured school teacher position in the

Hartford Public Schools District by the City of Hartford.  In his original Complaint, he named as

defendants six individuals employed in  supervisory positions in the City of Hartford Public Schools

and the City of Hartford (herein collectively "Defendants").[1]

---

[1]   Plaintiff sues each named individual Defendant in both his/her individual capacity and
official capacity.

1

In summary, Plaintiff alleges that in 2013, he taught physical education at Hartford's Simpson-Waverly School, located at 55 Waverly Street in Hartford, Connecticut.   Doc. 1 ("Complaint"), ¶ 16.  On April 25, 2013, while teaching a physical education class in the gymnasium – an area Plaintiff  describes as "separated from the rest of the school" without "other faculty, security and staff" accessible – Plaintiff "noticed disruptive behavior by a student who was interfering with other students playing basketball."  *Id.*, ¶¶ 16-23.  After Plaintiff intervened to prevent a fight among the students, the disruptive student allegedly "punched Plaintiff numerous times, including in the head, while [he] tried to retrain [sic] and control" the student.  *Id.*, ¶ 24. According to Plaintiff, although the student was "not injured in the incident," *id.*, ¶ 25, and the Principal's interviews with other student witnesses confirmed that the student at issue was "disruptive" and "violent," *id.*, ¶ 26, an anonymous complaint was filed against Plaintiff with the Connecticut Department of Families & Children ("DCF") on April 29, 2013, *id.*, ¶ 27.   An investigation by DCF followed.  *Id.*

"[O]n May 7, 2013 Defendants placed Plaintiff on administrative leave, 'pending the outcome of allegations against [him] of inappropriate conduct.'" *Id.*, ¶ 34.  On August 29, 2013, DCF investigator Melissa Bahre determined that Plaintiff committed "physical abuse" and "neglect" against the disruptive student.  *Id.*, ¶ 29. Plaintiff was then placed on the DCF "Child Abuse and Neglect Registry." *Id.*, ¶ 30.  In addition, "[o]n or about September 12, 2013, despite know[ledge] that the DCF process was still ongoing," Defendants initiated termination proceedings against Plaintiff pursuant to Conn. Gen. Stat. § 10-151(d), which addresses termination of a tenured teacher's employment.  *Id.*, ¶¶ 39-41, 49.  On September 19, 2013, Defendants informed Plaintiff that he was subject to termination for "Insubordination," "Moral Misconduct," and/or "Other due and sufficient

2

cause," which are grounds for terminating a tenured teacher under Conn. Gen. Stat. § 10-151 (d), (2), (3), & (6). *Id.*, ¶¶ 41, 50. "After Plaintiff notified Defendants that he was not subject to termination until a final determination of the DCF investigator['s 'findings," which he had chosen to appeal, Defendants ceased his termination proceeding.[2] *Id.*, ¶ 45.

Defendants thereafter allegedly sought to terminate Plaintiff's employment "based on his certification with the Connecticut [State] Department of Education ('CSDE')" by falsely claiming that he was not certified by the CSDE.[3] *Id.*, ¶¶ 46-47. On August 26, 2013, Plaintiff had completed and submitted Connecticut Department of Education Form ED 179, "Application For Continuation Of Professional Educator Certificate." *Id.*, ¶ 54. However, defendant Christina Kishimoto, Superintendent of Hartford Public Schools, "or her designee," did not sign the related Form ED 126 to verify Plaintiff's service until September 11, 2013. *Id.*, ¶ 55. Moreover, the signed ED 126 was allegedly not received by CSDE "until more than 45 days later, on October 25, 2013, the day the Plaintiff was terminated for failure to be certified." *Id.*, ¶ 56. Plaintiff alleges that "[i]t was the lack of Form ED 126 that was the basis for the CSDE 'notifying' Defendants that [Plaintiff's] certification application was incomplete." *Id.*, ¶ 57. Citing the expiration of Plaintiff's certification on October

---

[2] On January 23, 2014, upon Plaintiff's appeal of the DCF investigator's determination, the DCF complaint was dismissed with a finding by DCF's own "adjudication attorney" that "the Department's decisions are not supported by the record, and are REVERSED." Doc. 1, ¶ 31. Plaintiff further alleges that his behavior in restraining the student was "reasonable and necessary to protect himself [and] others from immediate physical injury" and to "maintain order," as permitted by Conn. Gen. Stat. § 53a-18(6). *Id.*, ¶¶ 32- 33.

[3] Plaintiff claims that by focusing on his certification renewal rather than alleged misconduct, "Defendants bypassed the provisions of [Conn. Gen. Stat.] § 10-151," which would have entitled him, as a tenured teacher who received notice of termination, to "file with the local or regional board of education a written request for a hearing" to be conducted before "an impartial hearing officer chosen by the teacher and the superintendent." Conn. Gen. Stat. § 10-151(d).

24, 2013, defendant Natasha Durant, Executive Director of Human Resources for Hartford Public Schools, wrote to Plaintiff that "[r]egretfully, the Hartford Public Schools is [sic] forced to separate your services immediately as a physical education teacher at Simpson Waverly School." *Id.*, ¶ 58.

By letter "dated November 5, 2013, CSDE requested an updated Form ED 179 from Plaintiff." *Id.*, ¶ 62. Then, one month after Plaintiff was terminated for lack of certification, "[o]n November 29, 2013 CSDE notified Plaintiff that because he was listed on the DCF registry his request for recertification was denied." *Id.*, ¶ 63. From January 14, 2014 to the present, "after the final determination of DCF clearing Plaintiff of any misconduct, he has been duly certified to teach by the CSDE." *Id.*, ¶ 64. The Department of Education Commissioner signed Plaintiff's certification, which became valid for the "period from October 25, 2013 to October 24, 2018," extinguishing the Hartford School Board's stated reason for Plaintiff's termination, *i.e.*, his "expired" certification. *Id.*, ¶ 59. Nonetheless, despite their knowledge that Plaintiff has been cleared of the DCF charges and recertified, "Defendants, jointly and severally, have refused to reinstate Plaintiff to his position." *Id.*, ¶ 65.

Plaintiff asserts that Defendants ultimately discharged him for lack of certification because he would have had procedural safeguards, including a hearing, had they pursued the theory that he should be terminated under Conn. Gen. Stat. § 10-151 for alleged misconduct (*i.e.*, the incident which gave rise to the DCF charges). *Id.*, ¶¶ 46-47. Section 10-151 provides that "[w]ithin twenty days after receipt of written notice by the superintendent that contract termination is under consideration, such teacher may file with the local or regional board of education *a written request for a hearing*." *Id.*, ¶ 41 (emphasis added). Plaintiff further alleges that on September 20, 2013, upon learning of Defendants' intention to terminate him due to the DCF charges, Plaintiff's union

4

counsel had in fact notified Defendants that Plaintiff requested "a private hearing before a single impartial hearing officer chosen by the teacher (Plaintiff) and the Superintendent," pursuant to Conn. Gen. Stat. § 10-151(d).  *Id.*, ¶ 52.

By avoiding a hearing and terminating Plaintiff based on lack of certification, Plaintiff alleges that Defendants, *inter alia*, acted under color of law and violated his federal and state constitutional rights, including his property right in his tenured employment. *Id.*, ¶¶ 72-77. In so doing, Defendants allegedly inflicted upon Plaintiff "great humiliation, pain, embarrassment, anxiety, stress, emotional mental upset, and loss of sleep, lost revenue, and attorney's fees." *Id.*, ¶ 71.

In filing this action, Plaintiff has included the following  eight causes of action in his Complaint: Count One (Deprivation of Civil Rights under 42 U.S.C. § 1983) against all Defendants; Count Two (Public Policy Wrongful Termination) against all Defendants; Count Three (Negligent Infliction of Emotional Distress) as to all Defendants; Count Four (Intentional Infliction of Emotional Distress) as to all Defendants; Count Five  (Deprivation  under 42 U.S.C. § 1983) as to the City of Hartford; Count Six (Liability under Conn. Gen. Stat. § 52-557n) as to the City of Hartford; Count Seven (Indemnification under Conn. Gen. Stat. § 7-465) as to the City of Hartford; and Count Eight (Aiding and Abetting) as to all Defendants.

## II.  **PENDING MOTION – Plaintiff's Motion to Amend Complaint [Doc. 24]**

Pending before the Court is Plaintiff's motion for leave to amend his Complaint [Doc. 24] pursuant to Rule 15(a)(2), Fed. R. Civ. P.  As Plaintiff explains in the papers supporting his motion, when he "filed [the original Complaint] on April 21, 2014," he "cit[ed] various violations against the named defendants and a claim under *Monell* [*v. Department of Social Services*, 436 U.S. 658

(1978)], against the City of Hartford for, *inter alia*, denying plaintiff his Due Process and Property rights under the United States Constitution."[4]  Doc. 24-1, at 1.  Since that time,  Plaintiff represents that he "has learned of additional documents, facts, occurrences and events that predate the filing of the original Complaint and that provide [him] with additional grounds for relief against the Defendants."  *Id.*, at 2.  In particular, he has "learned through discovery that Jill Cutler Hodgman ("Hodgman")[,] the Chief Labor and Legal Officer [of the Hartford School District,] was directly involved in the various acts of violation of the [P]laintiff's [c]onstitutional rights as set forth in the Amended Complaint."  *Id.; see also* Doc. 24-2 (proposed "Amended Complaint").  After additional discovery, including production of documents and consultations with witnesses and counsel "involved in the underlying labor litigation," Plaintiff asserts that "it is clear that Hodgman was a decision maker regarding the complained of deprivation of [his] [c]onstitutional rights." Doc. 24-1, at 2.  He thus concludes that "Hodgman is a necessary defendant in this case."

Despite the expiration of the permissible time period to respond, D. Conn. L. Civ. R. 7(a)(1), no Defendant has objected or responded to Plaintiff's Motion to Amend.  The Court resolves Plaintiff's unopposed request to amend his Complaint herein.

### III.   DISCUSSION

### A.   Rules 15 and 21, Fed. R. Civ. P.

Plaintiff herein seeks to amend his Complaint by, *inter alia*,  adding a new defendant, Hodgman, pursuant to Federal Rule of Civil Procedure 15, captioned, "Amended and Supplemental

---

[4]  In *Monell*,  "the Supreme Court permitted local governmental entities to be sued under 42 U.S.C. § 1983 for constitutional violations caused by acts committed pursuant to 'official policy.'" *Turpin v. Mailet*, 619 F.2d 196, 197 (2d Cir. 1980), *cert. denied*, 449 U.S. 1016 (1980).

Pleadings."   Addition of a party also implicates Federal Rule 21 of Civil Procedure, which provides

in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a

party." With respect to the interaction of Rules 15(a) and 21,  it has been held that "Rule 15(a)

generally governs the amendment of complaints, but in the case of proposed amendments where new

defendants are to be added, Rule 21 governs." *United States v. Hansel*, 999 F.Supp. 694, 697

(N.D.N.Y.1998) (citations omitted). The "perceived supremacy of Rule 21 is," however, "of no

practical consequence, since it is generally held that the standards governing motions to amend under

Rule 15 apply with equal force to motions to add parties under Rule 21." *Lego A/S v. Best-Lock

Const. Toys, Inc.*, 886 F.Supp.2d 65, 71 (D.Conn. 2012) (citing *Hansel,* 999 F.Supp. at 697–98). *See

also Oneida Indian Nation of N.Y. State v. County of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y.2000)

("[B]ecause in practical terms there is little difference between [Rules 15(a), 20(a) and 21] in that

they all leave the decision whether to permit or deny amendment to the district court's discretion, the

court will not separately analyze the present motions under each of those three Rules.") (citation and

internal quotation marks omitted);  *Mytee Prods., Inc. v. H.D. Prods., Inc.*, No. 05–CV–2286W,

2007 WL 4105713, at *3-4  (S.D.Cal. Nov. 16, 2007)  (applying standards applicable to Rule 15 to

a motion to amend complaint so as to add a party plaintiff).

    The Court will thus herein address Rule 15(a) and apply the standards governing amendment

of the pleadings under *Foman v. Davis*, 371 U.S. 178  (1962),  and its progeny  to determine whether

Plaintiff may make his proposed amendments and add Hodgman as a defendant.  Because there are

no grounds to amend as a matter of course under Federal Rule of Civil Procedure 15(a)(1), Plaintiff

seeks to amend under Rule 15(a)(2), which permits amendment "only with the opposing party's

written consent or the court's leave," which should be "freely give[n] . . . when justice so requires."[5] Defendants have provided no written consent to amend, so Plaintiff must request the Court's leave to amend.

"In the absence of any apparent or declared  reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.– the leave sought [to amend] should, as the rules require, be 'freely given.'" *Foman,* 371 U.S. at 182. *See also Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to file an amended complaint 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.").  Moreover, it is a "rare" event when "such leave should be denied*, . . .*  especially when there has been no prior amendment*.*" *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991) (citing *Foman*, 371 U.S. at 182).[6]

---

[5]   Under Federal Rule of Civil Procedure 15(a)(1), a party may "amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service  of  a  responsive pleading or 21 days after service of  a motion under Rule 12(b), (e), or (f), whichever is earlier."

Fed. R. Civ. P. 15(a)(1)(A)-(B).   Although this is the first amendment Plaintiff seeks with respect to his Complaint,  the  21-day period to amend "as of right" has expired.

[6]   The  Court  notes, however,  that  in  exercising its discretion in considering motions to amend, "despite the considerable latitude which Rule 15(a) grants in terms of allowing amendments, leave to amend should not be granted automatically or reflexively."  *Oneida Indian Nation of N.Y. State v. County of Oneida*, *N.Y.*, 199 F.R.D. 61, 73 (N.D.N.Y. 2000) (internal quotations and citation omitted).

In the case at bar, the proposed amendment is not the product of any proven undue delay or bad faith and there is no evidence that it will either result in undue prejudice to the Defendants or be futile in effect.[7] *Foman*, 371 U.S. at 182 (citing Fed. R. Civ. P. 15(a)). *See also Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) ("Parties are generally allowed to amend their pleadings absent bad faith or prejudice.") (internal citation omitted), *cert. denied*, 531 U.S. 979 (2000). During the process of discovery, Plaintiff learned of Hodgman's direct participation in the facts giving rise to his claims and sought to add her as a necessary defendant.

Furthermore, other than the addition of Hodgman as a defendant, Plaintiff proposes to add only three new paragraphs, containing additional facts to support his § 1983 action in Count One (¶¶ 64-66).[8] Paragraph 64 describes Plaintiff's union counsel's notification to Defendants on November 5, 2013, that Assistant Corporation Counsel Kaufman was "not correct" when she contended "that Mr. Meyers [Plaintiff] d[id] not have a right to a C.G.S. [§] 10-151 hearing." Doc. 24-2, ¶ 64. Paragraph 65 provides the text of an email from the State of Connecticut, Department of Education, Standards and Certification, to Plaintiff, dated October 31, 2013, informing him that as of that date, the department had received his application for continuation of his professional

---

[7] As the Chief Labor and Legal Officer for the Hartford School District, Hodgman was "a direct and personally involved decision maker regarding" Plaintiff's termination. Doc. 24-1, at 1. She thus initiated the letter (dated October 25, 2013) from defendant Durant to Meyers, informing him that "the Hartford Public Schools is [sic] forced to separate your services immediately as a physical education teacher at Simpson Waverly School." Doc. 24-2, ¶ 59. Consequently, it is likely that Hodgman has been on notice of this litigation from its inception. In other words, it is likely Hodgman either knew or should have known that the action would likely have been brought against her, but for an error, oversight, or lack of prior knowledge on the part of Plaintiff's counsel.

[8] The Court notes that these amended paragraphs, 64 through 66, are incorporated by reference into all other seven counts of the Amended Complaint. Plaintiff does not specify at this time whether the incorporation of these paragraphs is intended to provide factual background for his other claims or to actually set forth essential allegations.

educator certificate and he was "not at risk for a lapse of certification" and should "allow 2-3 weeks from the dated submission for an evaluation." *Id.*, ¶ 65.  Lastly, paragraph 66 alleges that "the [D]efendants in concert with members of the CSDE colluded to delay [P]laintiff's certification to deny [him] a termination hearing under CGS [§] 10-151." *Id.*, ¶ 66.

In sum, Plaintiff proposes to: (1)  add a defendant who allegedly was involved in his termination and (2)  provide additional facts  in support of  his § 1983 claim and perhaps his other seven claims by incorporation.  On the face of these proposed amendments, they appear proper  – relevant to the matter and neither offered after undue delay nor proposed in bad faith.  Furthermore, as set forth *supra*, no Defendant in this action has objected to Plaintiff's requested amendments.

Under these circumstances, amendment is favored.  However, before granting leave to amend, the Court must determine whether amendment will be "futile" – *i.e.*, whether Plaintiffs' amended complaint states a claim upon which relief may be granted.

**B.**     **Potential Futility of Amendment**

  **1.** **Futility due to Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)**

It is well established that "leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.  2014) (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)."  *Garay v. Novartis Pharmaceuticals Corp.*, 576 F.App'x 24, 25 (2d Cir. 2014) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).  *See also Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (finding  leave to replead would be futile where the complaint, even when read liberally, did

not "suggest [ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe")*; Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) ("When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted.").

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In deciding whether to grant a Rule 12(b)(6) dismissal,  the court "constru[es] the complaint liberally, accepting all [well-pleaded] factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir.2011) (citing *Twombly*, 550 U.S. at 555–56). *See also Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273 (2d Cir.2011). "[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.  When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  556 U.S. at 664, 679.  Thus, factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is

---

[9]   "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir.1999) (citation omitted).

'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). It thus follows that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As the *Iqbal* Court explained, even if a claim complies with the minimal pleading standards of Rule 8(a), Fed. R. Civ. P., by setting forth a "short and plain statement" showing the pleader's entitlement to relief, Rule 8 still "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### 2. <u>Futility on Other Grounds – Lack of Jurisdiction</u>

With respect to futility, an amendment is also considered "futile" if the amended pleading would be subject to a successful motion to dismiss *on a basis other than failure to state a claim. See, e.g., Amidax Trading Group v. SWIFT SCRL*, 671 F.3d 140, 149 (2d Cir. 2011) (holding district court did not abuse its discretion in denying plaintiff's request for leave to amend complaint in the absence of subject matter jurisdiction); *Wilson–Richardson v. Regional Transit Serv., Inc.*, 948 F.Supp.2d 300, 306 (W.D.N.Y.2013) ("no amendment of the complaint would be sufficient to salvage claims which are undisputedly unexhausted and untimely, and/or over which the Court lacks jurisdiction"). As this Court has previously summarized, "a proposed amendment would be futile if it destroyed the Court's subject matter jurisdiction, failed to state a claim, or asserted claims which are time-barred by the relevant statutes of limitation." *Faryniarz v. Ramirez*, 62 F.Supp. 3d 240, 250 (D.Conn. 2014) (citing *Taurus B, LLC v. Esserman*, No. 3:14cv715 (CSH) 2014 WL 4494398, at *2 (D.Conn. Sept. 12, 2014)).

12

With respect to subject matter jurisdiction, pursuant to Article III of the Constitution, a federal court has limited jurisdiction. It may only exercise subject matter jurisdiction where either: (1) the plaintiff sets forth a colorable claim arising under the Constitution or federal statute, creating "federal question" jurisdiction, 28 U.S.C. § 1331; or (2) there is complete diversity of citizenship between plaintiff and all defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a)(1). *Strawbridge v. Curtiss*, 3 Cranch 267, 1806 WL 1213, at * 1 (February Term 1806). *See also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir.2000) (delineating the two categories of subject matter jurisdiction).

A federal court must determine with certainty whether it has subject matter jurisdiction over a case pending before it; and, if necessary, must consider its subject matter jurisdiction *sua sponte*. *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir.2006).  If subject matter jurisdiction is lacking, the action must be dismissed.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").   *See , e.g., Lyndonville Sav. Bank & Trust Co.*, 211 F.3d at  700-01 ("If subject matter jurisdiction is lacking, the action must be dismissed.").

Examining the proposed Amended Complaint, the Court notes that jurisdiction in this action is based solely on "federal question" jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* Doc. 24-2 ("Amended Complaint"), ¶ 2.   Plaintiff also cites to 28 U.S.C. § 1367, requesting the Court to accept supplemental jurisdiction over the state law

claims.[10]

Moreover, there appears to be no alternative jurisdictional basis in this action in that diversity of citizenship appears lacking. From a reading of the Amended Complaint, one deduces that it is likely that Plaintiff and one or more Defendants are citizens of the same state, Connecticut.

An individual's citizenship for diversity purposes is determined by his or her *domicile*, rather than his residence. *See Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). *See also John Birch Soc. v. Nat'l Broadcasting Co.*, 377 F.2d 194, 199 (2d Cir. 1967) ("it has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens"). "In general, the domicile of an individual is his true, fixed and permanent home and place of habitation" – *i.e,* "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983).

Plaintiff, by his own statements, is a likely a citizen of Connecticut. He is "a resident of the Town of West Hartford and State of Connecticut" and was employed as "a tenured public school teacher by the City of Hartford." *Id.*, ¶ 6. It may thus be that Connecticut is also his domicile, his true and fixed home. Furthermore, Plaintiff alleges that "the Defendants are residents of the State of Connecticut." *Id.*, ¶ 3. Once again, it is possible, and perhaps even likely, that one or more of the

---

[10]   Section 1367 provides, in relevant part:

[I]n any civil action of which the district courts have original jurisdiction, the district courts *shall have supplemental jurisdiction* over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added).

individual Defendants in this action were also domiciled, rather than simply residing, in Connecticut at the commencement of this action.[11]

Furthermore, for the purposes of diversity jurisdiction, a municipal corporation, is considered a citizen of the state which created it. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 97 (1972) ("It is well settled that for the purposes of diversity of citizenship, political subdivisions are citizens of their respective States."); *Port of Seattle v. Oregon & W.R. Co.,* 255 U.S. 56, 71 (1921) (a municipal corporation is citizen of the state under whose laws it was incorporated); *Schiavone Const. Co. v. City of New York*, 99 F.3d 546, 548 (2d Cir. 1996) ("The City of New York is, not surprisingly, a citizen of the State of New York" because a "political subdivision of a State . . . is a citizen of the State for diversity purposes") (citations omitted); *Middle West Const. v. Metro. Dist. Of Hartford,* 133 F.2d 468, 468 (2d Cir. 1943) (same). Therefore, the City of Hartford is a citizen of Connecticut.

Diversity of citizenship is destroyed if Plaintiff and one or more Defendants are citizens of the same state. *See, e.g.*, *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80  (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)).  In sum, not only has Plaintiff pled insufficient facts to invoke diversity jurisdiction, but the facts he has provided at least militate toward a finding of no jurisdiction.

The Court will thus focus on the federal causes of action to see if either would survive a motion to dismiss.  If both are fatally defective, in the absence of demonstrated subject matter jurisdiction, the Court is bound to follow Second Circuit precedent to decline to exercise

---

[11]   For the purpose of federal subject matter jurisdiction, diversity must exist "at the time the action is commenced." *Universal Licensing Corp. v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002).

supplemental jurisdiction in the absence of original jurisdiction.

**C.**    **Federal Claims – Counts One and Five under Section 1983**

If the Court determines that the two federal causes of action would not survive a motion to dismiss, the Court will deny the motion to amend in the absence of a demonstrated basis to invoke the Court's original subject matter jurisdiction. In that event, the Court will not exercise jurisdiction over Plaintiff's supplemental state law claims. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996) ("While the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, *see* 28 U.S.C. § 1367(c)(3), it cannot exercise supplemental jurisdiction unless there is first a proper basis for original jurisdiction."); *see also In re Joint Eastern and Southern Dist. Asbestos Litig.*, 14 F.3d 726, 730 n. 2 (2d Cir.1993); *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir.1992). It is generally held that when all federal claims are dismissed, district courts should decline to exercise jurisdiction over state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 716 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed.").

The Court will therefore consider whether Plaintiff's proposed federal causes of action asserted in Counts One and Five would withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004). As set forth *supra*, to survive a Rule 12(b)(6) motion,  "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 66 (quoting *Twombly*, 550 U.S. at 570).

In Counts One and Five, Plaintiff sets forth claims for deprivation of civil rights under 42 U.S.C. § 1983 – against the named Defendants in Count One and against the City of Hartford, respectively. "With respect to a section 1983 claim, a plaintiff must prove four elements: (1) actions taken under color of law; (2) deprivation of constitutional or statutory right; (3) causation; and (4) damages." *Doe v. City of Waterbury*, 453 F.Supp. 2d 537, 542 (D. Conn. 2006) (citing 42 U.S.C. § 1983). Moreover, when the plaintiff brings a section 1983 claim against a municipality, he or she must prove a fifth element: "that an official policy of the municipality caused her constitutional injury." *Id.* (citing *Monell v. Dep't. of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978)).

The text of 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Local governments and municipalities are also "persons" within the meaning of the statute, so that liability may attach to them under section 1983. *Monell*, 436 U.S. at 690. As to the actions of a municipality's employee, the United States Supreme Court has limited municipal liability under § 1983 by holding that a municipality may not be held liable based on the vicarious liability theory of respondeat superior. 436 U.S. at 691. A municipality cannot, therefore, be held liable simply because its employee or agent committed a tort. *Board of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 405 (1997). Rather, a plaintiff must prove that a "municipal policy of some nature caused a constitutional tort." *Id.*

In Count One, Plaintiff has set forth a § 1983 claim that is plausible on it face. Plaintiff

17

alleges that in terminating his tenured position as a physical education instructor at Hartford's Simpson-Waverly School, Defendants took actions in their positions as Hartford officials and employees, "under color of law of the Constitution and [s]tatutes of the United States" and under Connecticut law,  which violated Plaintiff's various constitutional rights (due process, equal protection, property, and liberty). Doc. 24-2, ¶¶ 78-81.  Specifically, he claims that after he requested due process in the form of a hearing under Conn. Gen. Stat. § 10-151, on the "false" – and later dropped – DCF claims that he had neglected or abused a student,  Defendants chose an alternative, manufactured theory to attempt to terminate him (*i.e.*, failure to obtain recertification from the CSDE) in an attempt to deprive him of that hearing and, ultimately, his property right to tenured employment.

Moreover, Plaintiff alleges that "Defendants failed to have polices and/or procedures in place concerning the certification renewal process, the protection of Plaintiff's position while under investigation and the resolution of State certification problems." *Id.*, ¶ 82.  In particular, he alleges that defendant Kishimoto, Superintendent of Hartford Public Schools, failed to sign the requisite form, ED 126,  to verify his service as a teacher, until weeks after he submitted it.  *Id.*, ¶ 56. Furthermore,  that form was not in CSDE's receipt "until more than 45 days later, on October 25, 2013, the day [that] the  Plaintiff was terminated for failure to be certified." *Id.*, ¶ 57.  Taking such allegations as true, for purposes of a Rule 12(b)(6) motion to dismiss, one could reasonably infer that Defendants delayed Plaintiff's certification renewal in an effort to provide grounds for his termination without having to provide him with a hearing.  In sum, as Plaintiff alleges, he wrongfully lost "his tenured position in retaliation for his assertion of rights guaranteed under the [referenced] statutes, policies, laws and the Constitutions of the United States and State of Connecticut."  *Id.*,

¶ 84.

The Court thus finds that in Count One  Plaintiff has alleged the requisite four elements of a § 1983 claim:  (1) actions taken by Defendants under color of law to terminate him;  (2) deprivation of constitutional rights (due process, property) and/or statutory rights to a hearing on charges of misconduct and/or deprivation of a proper certification renewal process;[12] (3) the resulting loss of his tenured position, in which he has a property interest; and (4) various damages, including, *inter alia*,  "great humiliation, pain, embarrassment, anxiety, stress, emotional mental upset, and loss of sleep, lost revenue, and attorney's fees."  Doc. 24-2, ¶ 75.

In addition, Count Five incorporates by reference all paragraphs contained in Count One, thus encompassing the first four elements of a § 1983 claim.  In addition, in Count Five, Plaintiff  claims that the City's defective policies,  in both handling his allegedly false DCF charge and processing his certification renewal,  deprived him of his constitutional rights, including his right to due process (*i.e.*, a hearing before termination) and his property right to his tenured position as a school teacher. In short, Plaintiff has included a colorable claim of one or more problematic municipal policies, an element which is necessary to implicate a municipality under *Monell*.[13]

---

[12]    Conn. Gen. Stat. § 10-151(d) provides "all public school teachers in Connecticut tenured under its provisions, a property interest in their positions as teachers."  *Chisolm v. Ramia*, 639 F.Supp. 2d 240, 244 n.2 (D.Conn. 2009). *See also O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir.2005) (citing § 10–151(d) and holding that "[a] tenured public-school teacher[ ] has a legitimate claim of entitlement to his position under Connecticut law"); *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir.1999) (holding that a public school teacher has a property interest in his or her tenure and cannot be fired without due process); *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir.2002)  ("in this circuit, a person may possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent 'sufficient cause' for discharge or he can prove a de facto system of tenure") (citations omitted).

[13]    As set forth *supra*, a municipality may only be sued directly if a plaintiff alleges that a "municipal policy of some nature caused a constitutional tort." *Monell*,  436 U.S. at 69.  In other

In particular, in Count Five, Plaintiff alleges, *inter alia*, that he was charged with misconduct that Defendants knew or should have know was "invalid."   *Id.*, ¶ 105.  Furthermore, Defendants "supplanted false information and omitted valid information from their records and documents in order to deny Plaintiff the rights, customs, practices and fairness under Connecticut State Statutes, regulations, policies and the collective bargaining agreement." *Id.*  As to particular policies of the City, Plaintiff alleges that the City of Hartford had the duty to establish proper policies and procedures to be used by state and municipal officials in renewal of teachers' certification; and instead, Hartford "fostered and encouraged an atmosphere of lawlessness, repression and a repetitive policy, custom and practice of abusive and discriminatory behavior and procedures toward Plaintiff which represented the policy, practice, custom, usage and procedure of the City of Hartford." *Id.*, ¶¶ 106-07.  This policy of lawlessless. abuse,  and discrimination ultimately deprived Plaintiff of his constitutional rights, including those of "his property rights in employment" as a tenured teacher. *Id.*, ¶ 111.   All  five elements of a § 1983 action against a municipality are thus alleged.

Having found that both federal claims under § 1983 state plausible claims, the Court will grant Plaintiff leave to amend.  In so doing, the Court takes no position with respect to the merits of any or all of the state law claims set forth in Plaintiff's Amended Complaint.  These claims include: Count Two (Public Policy Wrongful Termination) against all Defendants; Count Three (Negligent Infliction of Emotional Distress) as to all Defendants; Count Four (Intentional Infliction of Emotional Distress) as to all Defendants; Count Six (Liability under Conn. Gen. Stat. § 52-557n) as

---

words, a municipality may not be found liable simply because one of its employees or agents committed a tort. *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 405 (1997).

to the City of Hartford; Count Seven (Indemnification under Conn. Gen. Stat. § 7-465) as to the City

of Hartford; and Count Eight (Aiding and Abetting) as to all Defendants.   The Court does, however,

encourage Plaintiff to take this opportunity to review each of his state law claims to determine

whether they are viable before filing his Amended Complaint.[14]

---

[14] For example,  with respect to his claim for public policy wrongful termination, Plaintiff may wish to consider whether, as in  *Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 405 (D.Conn. 2013), his "termination violated a public policy embodied and protected by statute" so that his "claim for common law wrongful discharge is precluded."  *See also  Peralta v. Cendant Corp.*, 123 F.Supp.2d 65, 85  (D.Conn. 2000) ("neither a wrongful discharge nor a breach of implied covenant claim are available where . . . a plaintiff has adequate statutory remedies through which the alleged public policy violations can be enforced") (citation and internal quotation marks omitted).

Likewise, Plaintiff may wish to determine whether he has alleged sufficiently "extreme and outrageous" conduct – "atrocious" and "beyond all possible bounds of decency" –  to state a viable claim for intentional infliction of emotional distress,  *Stancuna v. Schaffer*, 122 Conn.App. 484, 491-92 (2010) (citing  *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003)).  *See also Tomby v. Cmty. Renewal Team, Inc.*, No. 3:09-cv-l596 (CFD), 2010 WL 5174404, at *  (D.Conn. Dec. 15, 2010) (dismissing count of intentional infliction of emotional distress in action alleging racial discrimination, noting that  "the suffering must be so severe that no reasonable person could be expected to endure it;" "a routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior;" and "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not reach the standard of offensive conduct") (citations and internal quotation marks omitted).

In addition, as to negligent infliction of emotional distress, a plaintiff must allege that the defendant employer's "conduct *during the termination process* was sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." *Perodeau v. City of Hartford*, 259 Conn. 729, 751 (2002) (emphasis added) (citation and internal quotation marks omitted).  In other words, to state a viable claim for negligent infliction of emotional distress upon discharge one must include allegations of termination "conduct involv[ing] an unreasonable risk of causing emotional distress." *Id.*

In any event, whether Plaintiff's state law claims are viable in this action is a matter to be considered on a motion to dismiss, if appropriate.  Plaintiff may wish to avert such a motion, if any, by ensuring that his newly amended complaint includes only well-pled claims, including all essential elements.

**D.**     **Statutes of Limitations - Relation Back**

With respect to applicable statutes of limitations,  the limitations periods have not  been raised by the Defendants and the Court makes no decision in that regard.  The Court does, however, observe that because (1) the proposed amendments relate to Plaintiff's termination and (2) the additional defendant, Hodgman, is an official and/or employee of the Hartford School District who allegedly participated in the decision-making process regarding Plaintiff's termination, the date of the Amended Complaint likely dates back to the date of the original Complaint for purposes of the applicable statutes of limitation.[15]

Specifically, under Federal Rule 15(c)(1)(B), an amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out  –  or attempted to be set out – in the original pleading."  Here, the paragraphs Plaintiff seeks to amend simply provide additional factual information regarding events leading to his termination.

Furthermore, under Federal Rule 15(c)(1)(C) of Civil Procedure, an amendment substituting a new defendant on a claim included or sought to be included in the original complaint relates back

---

[15]     The  Court  notes  that  at  least  as to the § 1983 claims, those claims would appear to be timely.  In Connecticut, for purposes of § 1983 claims, the applicable statute of limitations is Conn. Gen. Stat. § 52–577, which provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." *Lounsbury v. Jefferies*, 25 F.3d 131, 133 (2d Cir.1994).  As the Second Circuit explained in *Lounsbury,*"[s]ince Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations."  25 F.3d at 133.  Because "the § 1983 remedy encompasses a broad range of potential tort analogies, from injuries to property to infringements of individual liberty" and general personal injury actions sound in tort, "§ 1983 claims are best characterized as personal injury actions" so that Connecticut's three-year personal injury statute of limitations applies. *Id*. (internal quotations and citations omitted); *see* Conn. Gen. Stat. § 52–577.  Because Plaintiff was terminated in October of 2013, his § 1983 actions appear to remain well within the applicable statute of limitations.

if, within the period allotted in Federal Rule 4(m) of Civil Procedure for service of process, the new defendant "received such notice of the action that it will not be prejudiced in defending on the merits" and also "knew or should have known that the action would have been brought against it" but for a mistake. *See, e.g., Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1076 (1993) ("Under the revised rule [15(c), amended 12/1/1991] an amended complaint relates back to the time of the original if the new party was aware of the action within 120 days of the filing of the original complaint."). Moreover, even if the statute of limitations has run, "[i]f a complaint is amended to *include an additional defendant* . . . , the amended complaint is not time barred if it 'relates back' to a timely filed complaint." *VKK Corp. v. NFL*, 244 F.3d 114, 128 (2d Cir.2001) (holding that district court abused its discretion by not permitting amendment to add party as a defendant) (emphasis added). *See also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2d Cir.1997) (the goal of relation-back principles is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense") (quoting Fed. R. Civ. P. 15 Advisory Committee Note (1991)) (internal quotation marks omitted); *Doe v. Whelan,* No. 3:08–cv–846 (CSH), 2010 WL 5093102, at *2 (D.Conn. Dec. 8, 2010) (holding relation back proper where new party was "appropriately made a Defendant because he had a role in making the removal decision that [was] being challenged in this case").

In the case at bar, the proposed factual amendments in the Amended Complaint relate to and/or arise out of the same transaction or occurrence set forth in the original Complaint, Plaintiff's termination. In addition, Plaintiff seeks to add defendant Hodgman, who was allegedly involved in the process to terminate Plaintiff's employment. Both amendments are uncontested and appropriate.

23

Given the limited nature of the proposed amendments, arising out of Plaintiff's termination, and Hodgman's official position for the Hartford School District, making it likely she learned of the action and knew or should have known she was a proper party to it, the amended pleading appears to relate back to the date of the original complaint. Absent any challenge to the statutes of limitations in this case, the Court makes no further determination regarding relation back at this time.

## IV. <u>CONCLUSION</u>

Plaintiffs' Motion for Leave to Amend Complaint [Doc. 24] is GRANTED. Accordingly, Plaintiff may add Jill Cutler Hodgman, the Chief Labor and Legal Officer of the Hartford School District, as a defendant in this action and may supplement his claims with the additional facts set forth in his proposed Amended Complaint [Doc. 24-2]. Plaintiff must file and serve his Amended Complaint on all Defendants, including Hodgman, on or before **July 24, 2015.**

Upon service of the Amended Complaint, Defendants are directed to answer or respond thereto in accordance with the Federal Rules of Civil Procedure. Within thirty (30) days after any Defendant answers or responds, the parties must meet and confer to prepare an amended Rule 26(f) Report, jointly proposing revised dates for the remaining case deadlines. That Report must be filed with the Court on or before fourteen (14) days after the conference in the form prescribed by Form 26(f), which is appended to this District's Local Rules.

In the interim, the parties may continue their ongoing discovery efforts to expedite this matter. At any time prior to trial, should the parties wish to renew settlement efforts, they may make

a joint motion for referral to a magistrate judge for the purpose of a settlement conference.

It is SO ORDERED.

Dated: New Haven, Connecticut
July 1, 2015

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge