UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL F. MEYERS, | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | CIVIL ACTION NO. |
| CHRISTINA KISHIMOTO, SUPERINTENDENT | : | 3:14-CV-00535-CSH |
| OF SCHOOLS;     NATASHA DURANT, EXECUTIVE | : | |
| DIRECTOR OF HUMAN RESOURCES; | : | |
| JILL CUTLER HODGMAN, CHIEF LABOR AND | : | MARCH 28, 2016 |
| LEGAL OFFICER; JENNIFER ALLEN, CHIEF | : | |
| TALENT OFFICER; KEVIN MCCASKILL, | : | |
| DIRECTOR OF SCHOOL DESIGN AND | : | |
| PROGRAMMING; JANET SERANNO, STAFFING | : | |
| SPECIALIST; MILLY RAMOS, LABOR RELATIONS | : | |
| OFFICER AND CITY OF HARTFORD | : | |
| | : | |
| Defendants | : | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Throughout his Opposition the plaintiff continually confuses his rights relative to a

proposed termination for cause under C.G.S. §10-151 and his rights once he failed to submit his

ED 179, Application for Continuation of Professional Educator Certificate resulting in his

teaching certificate expiring.  It is undisputed that the stated reason in his letter of termination

was the expiration of his teaching certification.  Ex. 11.  Plaintiff also attempts to manufacture

"disputed facts" in order to escape summary judgment.  His "facts" however, are generally just a

formulaic recitation of the elements of his claims and/or completely misstates the evidence.

> The mere existence of some alleged factual dispute between the parties will not
> defeat an otherwise properly supported motion for summary judgment. An issue is
> "genuine ... if the evidence is such that a reasonable jury could return a verdict for
> the nonmoving party." *Anderson,* 477 U.S. at 248 (internal quotation marks
> omitted). A material fact is one that would "affect the outcome of the suit under
> the governing law." *Id.* Only those facts that must be decided in order to resolve a
> claim or defense will prevent summary judgment from being granted. Immaterial

1

or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

*Loguidice v. City of Hartford*, No. 3:11-CV-786 VAB, 2015 WL 4094181, at *2 (D. Conn. July 7, 2015).

> When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000). However, the inferences drawn in favor of the nonmovant must be supported by evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment, *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir.1997), as is the "mere existence of a scintilla of evidence in support of the [nonmovant's] position," *Anderson,* 477 U.S. at 252.

*Id.* Thus, for example, the plaintiff claims a "disputed fact" is that "Serrano did not process the plaintiff's ED 126 in time for him to be recertified." Disputed Fact No. 4. He admits, however, that she informed him on September 11 and 27 that the form was finished and ready for him to pick up. Statement of Undisputed Facts No. 11, 14 and his admittance. Thus, the district's part of the process was completed six weeks prior to the expiration of his certification. He cites Serrano's deposition for the claim that he was "led to believe that submission of the ED 126 was all that was required, and that by sending that form to Serrano he had finished the application process." Disputed Fact No. 5. Nothing in the cited pages from Serrano's deposition supports this claim. Her e-mails to him made it clear that he was responsible for the application process. *See* Ex. 4 (reminding him of need to reapply for certification and that if the Superintendent needs to sign anything "please interoffice it to me. Once I get a signature, I will email you so that you can pick it up and deliver to the SDE"), Ex. 6 (Your ED 126 form has been completed/signed and is available for pick-up ...."), Ex 8 (friendly reminder ... you need to submit to the state dept. of certification your paperwork to be recertified"), Ex. 9 (second reminder that the ED 126 was "ready for pick up.") None of these communications suggest that simply submitting the ED 126 to Serrano was all the plaintiff had to do to renew his State teaching certification. The

plaintiff states that "No other teacher working for defendants was fired for a lapse in certification." and cites Serrano's deposition to support this. What the deposition stated, however, is:

> Q.    Have you ever terminated, not you personally, but in that process, terminate an employee because they did not get their certification done?
>
> A.    Yes.
>
> Q.    Who?
>
> A.    I'm sorry, I don't have the name.
>
>                    *         *         *
>
> Q. And what were the circumstances for this employee being terminated?
>
> A.    Certification lapsed.

Serrano Dep. p. 96. Cutler Hodgman testified that she was also aware of a handful of teachers terminated for lapse of certification. Cutler Hodgman Dep. pp. 94-101. The remaining alleged "disputed facts" either consist of legal conclusions and/or are not material for purposes of this motion.

**1.    Defendants are Entitled to Summary Judgment on the Plaintiff's Procedural Due Process Claims**

The plaintiff repeatedly and erroneously suggests that whether his teaching certificate had expired at the time of his termination is a disputed fact. The plaintiff's repeated claim that it is disputed does not make it so. The plaintiff has not provided one shred of evidence to support his claim that he submitted his application for renewal to the State Department of Education prior to when it expired on October 24, 2013. The plaintiff admits that on October 29, 2013 (four days after his certification expired) Robert Szczepanski from the SDE emailed him that "your certificate expired on October 24, 2013 and an application has not been filed to date." Fact 19 and admittance. He was again informed on October 30, 2013, that he had to file an ED 179 form

-- which is the Application for Continuation of Professional Educator Certificate. Fact 20 and admittance. He admits that he emailed an ED 179 *that was dated October 30, 2013* to the SDE on October 30, 2013. Fact 21 and admittance. The SDE's records indicate that he did not provide the actual original application form until October 31, 2013. Exs. 12-15, 16, 18. The plaintiff has not provided any evidence that he in fact filed an ED 179, Application for Continuation of Professional Educator Certificate prior to October 31, 2013. Thus, any argument made in his Opposition that he timely filed his ED 179 with the State Department of Education and was waiting for it "to be processed" is not even supported by his own admitted facts.

This then becomes a purely legal question of whether the plaintiff's failure to file his Application for Continuation of Professional Educator Certificate with the State Department of Education until seven days after his old certificate expired, meant that he was not a certified teacher between October 24, 2013 when his old certification expired and October 31, 2013 when he finally filed the ED 179 with the SDE. If he was not a teacher on those dates, then he was not legally a teacher on October 25, 2013 when his employment was terminated. Additionally, it is a legal question whether the SDE's denial of the renewal of his certification on November 20, 2013 (Ex. 18) meant that he was not legally able to be employed as a teacher from November 20 2013 through when it was retroactively approved on February 8, 2014. (Ex. 19). These do not rely on facts in dispute, but rather are legal questions that can be decided by the Court on summary judgment. The plaintiff has pointed to no legal authority that would require an employer to retroactively re-hire a teacher if the certification bureau retroactively decides to grant the certification at a later date.

The plaintiff seems to recognize this as he goes to great lengths to suggest that it was somehow the district's responsibility, and not his, to get his renewal application to the SDE on

4

time. It is a simple, basic fact, however, that the only person responsible to ensure paperwork is timely filed with the State Department of Education to process a renewal of a teaching certification is the teacher himself. Despite this, the district took several steps to remind him of his responsibility. It is undisputed that in July 2013, Serrano contacted the plaintiff to inform him of the pending expiration of his certification and that the State had informed her he had not yet submitted the necessary application for renewal. Fact 7 and plaintiff's admittance. He was warned at the time that "Failure to submit your application and all appropriate documentation in a timely manner will impact your employment status with the district." *Id.* On September 12, 2013, employee Victoria Hajdasz emailed the plaintiff to remind him that his certification expires on 10/24/2013 and that he "need[ed] to submit *to the state dept. of certification* your paperwork to be recertified." Fact 13, and admittance. Serrano also emailed the plaintiff on September 11 and 29 informing him that the Form ED 126 was available for him to pick up.[1] Facts 11 and 14 and admittance. The plaintiff has pointed to nothing that somehow shifted responsibility from himself onto the district for the timely filing of the ED 179 and supporting documents. In fact, Exhibit 2 to the plaintiff's Opposition, on which he heavily relies, states relative to the continuation of a professional educator certificate:

> You should apply to continue your certificate no earlier than six months and no later than six weeks before the date of expiration of your professional educator certificate. ... *The application must be received in our office BY the expiration date. Postmarks are NOT considered.*

Plaintiff's Ex. 2, p. 3. (emphasis supplied). Plaintiff's own union routinely sent out communications to its members reminding them of the responsibility to renew their certifications and that they could be terminated if they did not do this before the expiration date. Ex. 24. Although the plaintiff for the first time appears to be claiming that he submitted the ED 179 to

---

[1] This was the only form that the District was responsible to fill out for the plaintiff.

the district (Plaintiff's Statement of Disputed Fact No. 1) this makes no sense and does not satisfy the requirement that he submit the ED 179 to the State Department of Education.[2]

Pursuant to Request for Production of Documents No. 10, the defendants requested that the plaintiff "Produce a copy of the Form ED 179 that you claim in Paragraph 54 of the Complaint that you turned into the State Department of Education on August 26, 2013." Ex. 25. The plaintiff objected to the request stating that it somehow within the custody and control of the defendants and also was "ALREADY PROVIDED IN DEPOSITIONS." (emphasis in original). *Id.* The plaintiff, however, never produced a copy of an ED 179 Form during any depositions and has not produced it in support of his Opposition either.

The plaintiff has pointed to no cases that support his claim that he remained a "teacher" as defined under C.G.S. §10-151 despite failing to file his paperwork to renew his certification until one week after it expired. Similarly, he has pointed to no case law that supports his theory that he had a continued expectation in his employment as a teacher subsequent to failing to timely renew his certification.

The Supreme Court of Connecticut has ruled that a contract to teach during a period where a teacher is uncertified is an illegal contract. *Ames v. Board of Educ. Reg. Sch. Dist. No. 7*, 167 Conn. 444, 356 A.2d 100 (1975). Thus, in a case discussing tenure, the Court found that a teacher, who was teaching during a period where he was uncertified, was "contrary to law" and thus he had "no legal status as a teacher during that period." *Id.* at 448. The Court thus found that his contract terminated on the date his provisional certification expired and that he was not

---

[2] This is just one more inconsistent statement by the plaintiff. In his Amended Complaint he alleges he "completed and turned in to the State Department of Education A Form ED 179, "Application for Continuation of Professional Educator Certificate." Complaint ¶55. In his Affidavit he claims that on August 26, 2013 he completed and turned in to Janet Serrano the Form ED 179. Affidavit ¶48. In his statement of disputed facts he claims that he submitted his paperwork for recertification to "Serrano and Forzano" [both District employees] on or about September 27, 2013." Disputed Fact No. 1. He then claims that he thought that providing the ED 126 to Serrano was the only thing he needed to do to recertify, thus belying his claim that he had provided her the ED 126 and the ED 179. Disputed Fact 5.

entitled to a termination hearing under C.G.S. §10-151. *Id.* The Court addressed a similar situation in *Ubaldi v. Waterbury Board of Education*, 2007 WL 3121699 (Ct. Super. Ct. Oct. 9, 2007). There the Board of Education terminated the plaintiff's employment without a hearing because he was not certified for the position he held during the year in question. There the Court noted that in order to be considered a "teacher" in Connecticut the person must meet three requirements:

> (1) they must hold a position below the rank of superintendent; (2) the employee must be *certified* and employed by a board of education for at least ninety day, and (3) the employee must hold a position which required certification issued by the state board of education.

*Id.* at *2. The Court noted that the "Supreme Court has held that a teacher who does not have the certification is not eligible for a hearing prior to termination." *Id.* citing *Ames*, 167 Conn. at 448. The Court further noted that under C.G.S. §10-145 that a teacher who is employed by a district must be certified and that "without certification, a teacher is not entitled to receive a salary under Section 10-145(a)." *Id.* The Court then held that a Board "cannot waive the statutory requirement that the Plaintiff be certified." *Id.* at *4 and *5. The Court thus ruled that the district did not breach the plaintiff's contract by terminating him in the middle of his contract when he was not certified.

The Washington Appellate Court reached a similar decision in *Mount Adams School District v. Cook*, 113 Wash.App. 472 (2002) (reversed on other grounds). Washington has a similar law to Connecticut which state that "[n]o teacher … shall be employed … unless he or she is the hold of an effective teacher's certificate or other certificate required by law or the state board of education for the position for which the employee is employed." *Id.* at 479. The plaintiff in that case was terminated for failing to timely renew his teaching certificate. He

argued that he should not be terminated because he had "substantially complied with the renewal requirements." *Id.* The Court ruled that:

> There is no dispute that his continuing education credits were completed before the first day of school. But [the plaintiff] technically did not meet the requirements of his contract because he had lost his teaching certificate and the District was entitled to terminate him. There is no Washington authority for the proposition that substantial compliance with teaching certificate renewal prevents termination.

*Id.* at 480.

This case is no different than those discussed above and in the Defendant's Memorandum in Support of Summary Judgment. It is undisputed that the plaintiff first filed his Form 179 Application for Continuation of Professional Educator Certificate on October 31, 2013. Exs. 12-15, 16, 18. It is also undisputed that his original certificate was valid through October 24, 2013. Exs. 2, 10a. Thus, on October 25, 2013, when he was terminated, he was not certified and thus was not a teacher as defined under statute. He, therefore, was not entitled to a hearing under C.G.S. §10-151 prior to his termination. The plaintiff, therefore, cannot establish a procedural due process violation and defendants are entitled to summary judgment.

### 2.   Defendants are entitled to Summary Judgment as to the Plaintiff's Newly Raised Claim For Stigma Plus Procedural Due Process

Plaintiff, for the first time, is now claiming a "stigma plus" procedural due process claim.[3] In order to establish a stigma plus claim the plaintiff must satisfy three elements:

1.  the plaintiff "must ... show that the government made stigmatizing statements about [her]—statements that call into question [the] plaintiff's good name, reputation, honor, or integrity."

2.  "a plaintiff must prove these stigmatizing statements were made public."

---

[3] Nowhere in the Amended Complaint does the plaintiff reference "stigma plus" procedural due process as opposed to simply claiming he was denied due process prior to his termination from employment.

3.   "the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment."

*Segal v. City of New York*, 459 F.3d 207, 212-13 (2d Cir. 2006) (internal citations omitted). The plaintiff's claim fails on the first two prongs. Additionally, as the plaintiff never requested a name clearing hearing, he cannot be said to have been denied one. The plaintiff attempts to claim that the termination of the plaintiff's employment for the loss of his certification after the district had put him on notice of potential termination due to being placed on the DCF child abuse registry is sufficient to establish "stigma plus." Plaintiff's argument, however, fails for several reasons.

### a.   The plaintiff has not established that any of the named defendants made any stigmatizing remarks about him

The sum total of the plaintiff's claim for "stigma plus" is that because he was terminated after being placed on administrative leave due to a DCF finding of neglect, that the "defendants *intimated* that [he] was terminated for abusing a child student." Opposition p. 11. Conspicuously missing from his complaint as well as his memorandum and supporting documents are any allegations of specific stigmatizing statements he is claiming were made by each defendant.

The legally required notice that termination of his employment was under consideration was neither false nor disparaging as the plaintiff suggests. Rather, the original notice of potential termination did not even contain a reason. Ex. 7. After the plaintiff asked for the reasons in writing, the district supplied those reasons to him. The letter stated in pertinent part that it was due to both "inappropriate physical contact with a student" and "a DCF finding that you physically neglected a student and that you pose a risk to the health, safety or well-being of children such that you are recommended to be placed on DCF's Central Registry." Ex. 26. It is

9

undisputed that DCF had issued a finding that he had neglected a student and recommended that he be placed on the Central Registry.[4]  Complaint ¶¶30-31.  As discussed in section 6 *supra*, state statute requires the district to commence termination proceedings under C.G.S. 10-151 after being informed of such a finding.  "[T]rue public statements that a party is under investigation [are not considered] stigmatizing."  *Wiese v. Kelley*, No. 08-CV-6348 (CS), 2009 WL 2902513, at *5 (S.D.N.Y. Sept. 10, 2009)

The actual letter of termination states that the termination was because "according to the State Department of Education Bureau of Certification and Professional Development, your professional educator certification for the endorsement of physical education … expired on October 2, 2013."  Ex. 11.  There is no mention in the actual termination notice of any allegations relative to the DCF findings, neglect, abuse or the Central Registry.  The plaintiff does not argue, nor could he, that this was stigmatizing.  Furthermore, the fact that the plaintiff was hired as a teacher for the 2015-2016 school year belies his claim that the termination for lack of certification somehow prevented him from being employed.  Ex. 26.

    **b.**    **The alleged statements were not publicized**

Missing from the plaintiff's complaint and Memorandum is any evidence that the notice of potential termination based on the DCF finding was published in any way.  He certainly has not made any allegations of any of the individual defendants publicizing that he was under consideration for termination because of the DCF finding.  He merely makes blanket statements suggesting that somehow the public would know about the DCF finding and would believe the termination was because of it.

---

[4] Once this finding was made, the district was obligated to commence termination proceedings under C.G.S. §10-151, which requires the employer to state the reasons in writing if requested by the employee.

For the publication requirement to be satisfied, the "defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest."

*Abelli v. Ansonia Bd. of Educ.*, 987 F. Supp. 2d 170, 175 (D. Conn. 2013) (quoting *Velez*, 401 F.3d at 87).

Additionally, to the extent that he is somehow claiming that it was published internally, it would be protected by qualified privilege.

The internal publication of a defamatory statement, however, may be protected by a qualified privilege, such as that for "communications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination." *Torosyan v. Boehringer Ingelheim Pharm., Inc.,* 234 Conn. 1, 29, 662 A.2d 89 (1995). Although such communications are deemed to have been published, the qualified privilege protects the employer from liability for these statements so long as the privilege is not abused, such as when statements are made with actual malice (i.e. knowledge of falsity), *see id.,* or if the employer does not "limit[ ] the publication of the statement to those persons who have a legitimate interest in the subject matter," *Harbolt v. Steel of W. Virginia, Inc.,* 640 F.Supp.2d 803, 820 (S.D.W.Va.2009).

*Abelli v. Ansonia Bd. of Educ.*, 987 F. Supp. 2d 170, 177 (D. Conn. 2013). In this case, since the plaintiff has failed to identify what stigmatizing statements he is claiming each defendant made and/or to whom they were allegedly published, he cannot establish stigma plus.

### c.    The plaintiff never requested a name clearing hearing

Ultimately fatal to the plaintiff's complaint is the fact that the only process due to an employee in a stigma plus claim is a name clearing hearing. *Segal v. City of New York*, 459 F.3d 207, 214-217 (2d Cir. 2006). As the plaintiff failed to request any such name clearing hearing, he cannot claim denial of due process in this case. Furthermore, the district never found him guilty of any misconduct and did not terminate him for cause. Thus, there would be no need for a name clearing hearing.

**3.      Defendants are entitled to Summary Judgment on the Claims for Substantive Due Process**

As noted by the Second Circuit, employment interests are generally not protected under substantive due process because they do not implicate fundamental rights. *Tessler v. Paterson,,* 451 Fed. Appx. 30, 32-33 (2d Cir. 2011). The plaintiff in his Memorandum and Affidavit has not provided any evidence of conduct by any of the defendants that would be so outrageous as to transform his run of the mill wrongful termination claim into one for substantive due process. Conspicuously missing from the plaintiff's Memorandum is also any legal support for his suggestion that the termination of a teacher who allowed his license to expire is somehow shocking to the conscience in a way that rises to a constitutional violation.[5] He has provided no support for his claim that this is somehow different than the regular employment termination case that courts have routinely found do not rise to the level of a substantive due process violation. This claim, therefore, should be dismissed.

Plaintiffs' suggestion that the failure to rehire him after his teaching certification was retroactively renewed by the State Department of Education on February 8, 2014 is equally unsupportable. The plaintiff admitted that subsequent to his certificate being renewed, that he never reapplied for a position with the District. Fact 29 and plaintiff's admittance. Thus, he cannot assert that the failure to rehire him after the SDE issued his certification retroactively violated his substantive due process rights.

---

[5] At most, the plaintiff can show that the district improperly relied on an affirmation from an employee from the State Bureau of Certification that the plaintiff had not renewed his teaching certification as of the date he was terminated. "Making a bad decision or acting negligently is not the sort of 'conscience-shocking' behavior that violates the Constitution." *H.B. v. Monroe Woodbury Cent. Sch. Dist.*, 2012 WL 4477552 at *12 (S.D.N.Y. Sept. 27, 2012).

**4.    Defendants are entitled to summary judgment on the equal protection claims**

In his Opposition, the plaintiff did not identify any protected class to which he belongs and that he is claiming he was discriminated against because of. Rather, he is claiming that he was treated differently than all other teachers when he was terminated for allowing his certification to expire. This can only be seen as a "class of one" equal protection claim, which is not cognizable in an employment case. *Enquist v. Oregon Dept. of Ag.*, 553 U.S. 591 (2008).

**5.    All individual defendants are entitled to Qualified Immunity**

One of the most basic requirements of opposing a motion for summary judgment is the requirement that the non-moving party must establish genuine issues of material fact presenting "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2050, 91 L.Ed.2d 202 (1986). The plaintiff makes many conclusory statements about things that he does not allege to have personal knowledge in any attempt to create issues of fact. He does not, however, provide any actual evidentiary support for his allegations.

Plaintiff also blatantly misstates the sworn testimony of witnesses to support his claims of disputed facts. Thus, for example, he states in his "Statement of Disputed Facts" that Serrano testified that "Defendants had a policy of ensuring that recertification was completed on time, and kept track of and sent reminders to teachers when a recertification was due." (Disputed Fact 2). What Serrano actually testified was that she sends everybody a reminder three months prior to the date their certification expires. Serrano Dep. p. 58. It is undisputed that she also sent a reminder to Meyers. Ex. 4. This does not support the district having a responsibility or policy of ensuring that teachers complete the recertification process on time.

Furthermore, he states that "Serrano did not process the plaintiff's ED 126 in time for him to be recertified." Disputed Fact 4. It is undisputed, however, that Serrano e-mailed the plaintiff that his ED 126 was finished and ready for pick up on September 11 and then again on September 27. Exs. 6, 9. This was in plenty of time for him to get his recertification paperwork into the SDE prior to his certification expiring on October 24. As the plaintiff claims that the SDE did not receive the ED 126 until October 25, 2013, it is clear that he failed to send it to the SDE in a timely manner, despite it being ready for him to pick up from the District on September 11. Plaintiff also suggests that "Despite being responsible for the certification process Serrano did not know if the original ED 126 was signed or forwarded to the CSDE." Disputed Fact 4. In fact, Serrano testified that as of September 11 the ED 126 was signed by Kimberly Shulte. Serrano Dep. 63. She also testified that she was "not sure what he [Plaintiff] did with the [original ED 126] when he picked it up." Serrano Dep. p. 64. This does not support the alleged undisputed fact that Serrano was responsible for the plaintiff's certification process and was unaware if the ED 126 was forwarded to the CSDE. The responsible party for sending the document to the CSDE was the plaintiff himself, not Serrano. Serrano specifically stated in her deposition that it was NOT her responsibility to make sure that all the paperwork is in order so the teacher gets recertified. Serrano Dep. pp. 66-67. She stated very clearly that it was the "teachers' responsibility to make sure they get certified." Serrano Dep. p. 67. This tracks with her original email to the plaintiff on July 9 wherein she states "The State indicates that you have not submitted any paperwork renewing your certification" and that if his application needs the signature of the Superintendent or her designee, once he submits the form and it is signed she "will email you so that you can pick it up and deliver it to the SDE." Ex. 4.

It is unfathomable that the plaintiff, who was not a new teacher at that point, had a belief that it was the District's responsibility to apply for the recertification of his license and/or that the district had the responsibility to submit the Application to the SDE for him.

Absent from the plaintiff's argument is any evidence that any of the individually named defendants engaged in any acts that violated his constitutional rights. Rather, he relies on broad allegations of "objectively unreasonable conduct of all defendants" (p. 16), that the "defendants" – regardless of who each individual is and/or the authority of that individual to act – should have provided the plaintiff with some unidentified type of "due process" (p. 14). He has not, however, identified any actions by each individual defendant that a reasonable fact finder could find violated the plaintiff's constitutional rights.

Beyond that, the plaintiff has failed to point to <u>any</u> case law whatsoever that supports a claim that the plaintiff remained a teacher despite the statutory definition after the State informed the district that the plaintiff's teaching certification had expired and/or that required the plaintiff to be given some type of hearing prior to terminating his employment for failing to maintain his teaching certification.

**6.**     **<u>Intentional Infliction of Emotional Distress</u>**

The plaintiff has indiscriminately brought claims for intentional infliction of emotional distress against all named defendants. Neither in his complaint nor in his Opposition has he detailed any actions by each named defendant that would establish IIED. Rather, he makes broad claims that "all the defendants" collaborated to "illegally and falsely subject[] the plaintiff first to a termination proceeding when the matter was not yet finalized by DCF" and then decided to terminate him for failing to maintain his teaching certification. Opposition p. 17. He then claims this was done "purposely" and in retaliation. The plaintiff, however, who brought

this claim against numerous individual employees, has pointed to no evidence to support this, including no evidence to support that the majority of these individuals even had the power to terminate him.

The termination based on a DCF finding of neglect and recommendation that he be placed on the Central Registry is required by statute. Thus, the commencement of the termination process in this situation cannot be seen as extreme or outrageous. The plaintiff continues to suggest that the district had no ability to start the termination process until the completion of the DCF appeal process, but nothing within the statute supports this. Rather, C.G.S. §17a-101i(a), which deals with certified employees in public schools, requires that once DCF informs the superintendent of the finding of neglect and proposed placement on the Central Registry the superintendent must suspend the employee with pay and that the suspension will remain "in effect until the board of education acts pursuant to the provisions of section 10-151 [the teacher termination statute]." This is contrasted with C.G.S. §17a-101i(b) dealing with private schools and child care centers that requires the employer to suspend the employee "until the incident of abuse or neglect has been satisfactorily resolved by the employer ... or until an appeal, conducted in accordance with section 17a-101k, has resulted in a finding that such staff person is not responsible for the abuse or neglect ..." There is no provision in the section dealing with certified employees allowing the superintendent to wait until the DCF appeal process has run its course prior to starting termination proceedings. Thus, the district was required to start the termination process upon being informed by DCF that the teacher was found to have neglected a student and was being recommended for placement on the Central Registry. Following the statute cannot be seen as outrageous conduct. Furthermore, there is no evidence presented by the

plaintiff that any individual defendant had any involvement in the decision to commence the 10-151 hearing process.

As to the termination for the lapse in certification, there is also no evidence that any employee other than Natasha Durrant made that decision. Furthermore, there is no evidence presented that would support a finding that terminating an employee who had not kept his certification current is somehow outrageous or beyond the bounds of decency. Rather, under C.G.S. §10-145 it would have been illegal to continue to employee the plaintiff as a teacher once his certification expired.

The plaintiff's manufactured claim that the defendants were somehow to blame for his loss of certification has no support in the facts presented by the plaintiff. Nobody but the plaintiff is responsible for renewing his certification. The plaintiff, as an experienced teacher should have known that. Per the State Department of Education, the plaintiff did not file his ED 179, Application for Continuation of Professional Educator Certificate until October 31, 2013, seven (7) days after his certification expired. Exs. 13-15, 16, 18. Although the plaintiff makes much of the fact that the District filled out the ED 126 incorrectly, there is no evidence that this was the reason that the certification expired. Rather, it was the fact that as of October 25, 2013, when he was terminated, he had not provided any paperwork to the SDE to start the renewal process. It is undisputed that the district had informed him as of September 11, 2013 that the ED 126, the only form the District needed to fill out, was ready for him to pick up so he could provide it to the SDE. His failure to do so cannot be imputed to the defendants.

There is simply no evidence presented of any conduct by any of the defendants that reaches the level of outrageous conduct to establish IIED.

**7.    Negligent Infliction of Emotional Distress**

Once again, the plaintiff makes a formulaic recitation of the elements of Negligent Infliction of Emotional Distress. The plaintiff, however, fails to address the fact that NIED only lies in an employment situation if the individual's conduct *during the actual termination process* was done in an inconsiderate, humiliating or embarrassing manner. *See Belanger v. Commerce Clearing House, Inc.*, 25 F.Supp.2d 83, 84 (D. Conn. 1998), *Parsons v. United Technologies*, 243 Conn. 66, 88-89, 700 A.2d 655 (1997)). The plaintiff claims that the mere fact of termination itself supports the finding on NIED. This is legally insufficient. *See Parson*, 243 Conn. at 88-89. It is undisputed that the plaintiff was terminated via letter. (Ex. 11). There is nothing inconsiderate, humiliating or embarrassing about the sending of the letter or the contents of the letter. The plaintiff's claim for NIED, therefore, must fail.

**8.    Claims Against The Individuals In Their Official Capacity**

Although the plaintiff spends time in his Memorandum arguing that the plaintiff's employer is really the City of Hartford and not the Hartford Board of Education, he has not actually addressed the issue of whether the City (or the HBOE) had a policy, practice or custom that resulted in any alleged deprivation of constitutional rights. As the plaintiff has not provided any legal argument in opposition to the defendants' motion for summary judgment, his claims against the individual defendants in their official capacity (and thus against the HBOE) should be dismissed. *See DeMoss v. Norwalk Bd. of Ed.,* 21 F.Supp.3d 154, 172 (D.Conn.2014) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (internal quotation marks omitted0; *See also Loguidice v. City of Hartford*, No. 3:11-CV-786 VAB, 2015 WL 4094181, at *2 (D. Conn. July 7, 2015) (same).

9.      **Claims Against The City Of Hartford**

The plaintiff provides no support for his claim that the City of Hartford is a proper

defendant other than a vague claim that the City funds the Hartford Board of Education. This is

insufficient to make the City of Hartford a defendant in this matter. Judge Covello in the matter

*Prashad v. Hartford*, Case No. 3:13-cv-01381 (Ex. 27) recently ruled that the Hartford Board of

Education, not the City of Hartford was a teacher's employer and thus dismissed all claims

against the City of Hartford. This was reaffirmed by Judge Covello on March 24, 2016 when he

denied the plaintiff's motion for reconsideration. Ex. 28.

10.     **The Defendants are all entitled to Governmental Immunity**

The plaintiff's sole claim against governmental immunity is that the defendants acted

with malice when the district terminated him for failing to timely renew his teaching

certification. The plaintiff, however, has provided no evidence of the individual defendants

acting with malice. As such, this exception to governmental immunity cannot be sustained.

Furthermore, to the extent that the plaintiff is alleging intentional torts by the individual

defendants, neither the Board nor the City can be held liable for that as municipal entities cannot

be held liable for the intentional torts of their employees. C.G.S. §52n(a)(2)(A); *Pane v. City of*

*Danbury*, 267 Conn. 669 (2004) (municipalities are immune from liability for any intentional

torts).

The plaintiff's own claim supports the dismissal of his claims against the HBOE and/or

the City of Hartford. The plaintiff argues that his claim pursuant to C.G.S. §7-465 are based on

claims that the individual defendants acted with "malice, wantoness or intent to injure."

Opposition p. 19.

> Connecticut General Statute Section 7–465 allows a plaintiff to seek indemnity
> from a municipality based upon the actions of a municipal employee within the

scope of his municipal employment," *Jones v. City of Hartford*, 285 F.Supp.2d 174, 190 (D.Conn.2003), so long as "the injury 'was not the result of any 20illful or wanton act,' " *Carey*, 480 F.Supp.2d at 567 (quoting Conn. Gen.Stat. § 7–465)

*Loguidice* , 2015 WL 4094181, at *8.  As such, the claims against the municipal defendants

under C.G.S. §7-465 must fail and they are entitled to summary judgment.

## 11.   **Aiding and Abetting**

The plaintiff did not oppose the request for summary judgment as to the claims for aiding

and abetting.  As such, they should be deemed abandoned.  *See DeMoss v. Norwalk Bd. of Ed.,*

21 F.Supp.3d 154, 172 (D.Conn.2014) ("Federal courts may deem a claim abandoned when a

party moves for summary judgment on one ground and the party opposing summary judgment

fails to address the argument in any way.") (internal quotation marks omitted).

> THE DEFENDANTS:
> Christina Kishimoto, Natasha Durrant, Jill Cutler Hodgman, Jennifer Allen, Kevin McCaskill, Milly Ramos, Janet Serrano, City of Hartford
>
> BY/s/ Melinda B. Kaufmann
> Melinda B. Kaufmann
> Assistant Corporation Counsel
> 550 Main Street, Suite 210
> Hartford, CT 06103
> Federal Bar No. ct26712
> Telephone (860) 757-9700
> Facsimile (860) 722-8114
> Email : kaufm001@hartford.gov

CERTIFICATION

     This is to certify that on March 28, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

     James S. Brewer, Esq.
     67 Russ Street
     Hartford, CT 06106
     jbreweratty@gmail.com

            /s/ Melinda B. Kaufmann
            Melinda B. Kaufmann