**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| |
|---|
| PAUL F. MEYERS, |
| Plaintiff, |
| v. |
| CHRISTINA KISHIMOTO, NATASHA DURANT, JENNIFER ALLEN, KEVIN MCCASKILL, MILLY RAMOS, JANET SERANNO, CITY OF HARTFORD, and JILL CUTLER HODGMAN, |
| Defendants. |

3:14-cv-00535 (CSH)

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HAIGHT, Senior District Judge:

Plaintiff Paul F. Meyers brings this action against Defendant the City of Hartford and various individuals (collectively, "Individual Defendants").[1] Plaintiff alleges that he was improperly terminated as a physical education teacher at the Simpson Waverly School in Hartford, CT.

Specifically, Plaintiff asserts 42 U.S.C. § 1983 claims against the Individual Defendants in their official and individual capacities based on violations of Plaintiff's Fourteenth Amendment rights (Count One),[2] a state law negligent infliction of emotional distress claim against Defendants

---

[1] In the text, the collective noun "Defendants" refers to the City of Hartford and the Individual Defendants.

[2] Although Plaintiff's Amended Complaint appears to state this claim against all Defendants, Plaintiff separately alleges a claim against the City of Hartford reincorporating Count One's allegations. For this reason, the Court will construe Count One as being against only the Individual Defendants.

(Count Two), a state law intentional infliction of emotional distress claim against Defendants (Count Three), 42 U.S.C. § 1983 claims against the City of Hartford based on violations of Plaintiff's Fourteenth Amendment rights (Count Four), a state law claim pursuant to Conn. Gen. Stat. § 52-557n against the City of Hartford based on the negligence of its employees (Count Five), a state law indemnification claim pursuant to Conn. Gen. Stat. § 7-465 against to the City of Hartford based on the actions of its employees (Count Six), and aiding and abetting state law claims against Defendants (Count Seven). Defendants move for summary judgment as to all of Plaintiff's claims. This Ruling resolves that motion.

## I. Factual Background

The following facts are derived from the parties' submissions pursuant to D. Conn. Local Rule 56(a) (referred to herein as "Defs. Local Rule 56(a)(1) Statement," "Pl. Local Rule 56(a)(2) Statement," and "Pl. Statement of Disputed Facts"); uncontroverted deposition testimony; and the exhibits attached to the parties' respective memoranda of law (respectively, "Defs. Ex." and "Pl. Ex."). Docs. 37, 41, 45, and 48. The facts recounted in this Part are undisputed or indisputable. All reasonable inferences have been drawn in Plaintiff's favor. The relevant period of time is from April 2013 to February 2014.

Defendants in this action are the City of Hartford, Christina Kishimoto, Kevin McCaskill, Jill Cutler Hodgman, Milly Ramos, Natasha Durrant, Janet Serrano, and Jennifer Allen.[3] Each of the Individual Defendants was employed by the Hartford Board of Education ("HBOE"). Christina Kishimoto was the Superintendent during the relevant period. *See* Pl. Ex. 10 (Deposition of

---

[3] Plaintiff appears to have misspelled Defendant Durrant's and Defendant Serrano's last names. For purposes of this opinion, the Court adopts the spellings in Defendants' filings of "Durrant" and "Serrano."

Defendant McCaskill ("McCaskill Dep.")) at 11:15-17. Kevin McCaskill was the Director of School Design, and for the 2012-13 school year, he was also a Director of Secondary Schools. *Id.* at 10:13-24. He reported to the Chief Operating Officer of Hartford Public Schools, Dr. Donald Slater, during that period. *Id.* at 9:9-14. His job was "reform work," which he described as giving the schools a thematic approach to their curriculum and to their personnel and professional development. *Id.* at 9:20-10:1.

Jill Cutler Hodgman was the Chief Labor and Legal Officer for the HBOE during the relevant time period. Pl. Local Rule 56(a)(2) Statement ¶ 39.[4] In that capacity, she was responsible for the termination of employees of the HBOE pursuant to Conn. Gen. Stat. § 10-151 and the placement of employees on administrative leaves of absences during pending investigations. *Id.* ¶¶ 40-41. Milly Ramos was a Labor Relations Specialist who reported directly to Defendant Hodgman. *Id.* ¶ 33. She worked on a regular basis with the Connecticut Department of Children and Families ("DCF"), coordinating investigations with DCF, and investigating employee misconduct for the HBOE. Pl. Ex. 9 (Deposition of Defendant Hodgman ("Hodgman Dep.")) at 31:3-32:9. Natasha Durrant was the Executive Director of Human Resources for the HBOE. Pl. Local Rule 56(a)(2) Statement ¶ 45. Janet Serrano was a Staffing Specialist for the HBOE, but not the assigned specialist for Plaintiff's school, Simpson Waverly, during the relevant time period. *Id.* ¶¶ 36-37. Jennifer Allen was the Chief Talent Officer for the Office of Talent Management during the relevant period. *See* Am. Cmplt. (Doc. 30) ¶ 10; Pl. Ex. 10 (McCaskill Dep.) at 24:2-6.

Plaintiff was a physical education teacher at Simpson Waverly School in Hartford, CT and

---

[4] For ease of reference, the Court cites to Plaintiff's Local Rule 56(a)(2) Statement because it contains Defendants' facts and notes what Plaintiff has admitted and what facts Plaintiff disputes.

had been employed by the Hartford schools since 1998. *See* Pl. Local Rule 56(a)(2) Statement ¶ 1; Defs. Ex. 1. Plaintiff had a five-year certification from the State of Connecticut to teach Physical Education, Pre-K through Grade 12 that expired on October 24, 2013. Defs. Ex. 2. On April 25, 2013, Plaintiff was involved in an incident with a disruptive student at Simpson Waverly during a physical education class. Pl. Local Rule 56(a)(2) Statement ¶ 4; Pl. Ex. 6 at 2-4. An anonymous complaint was thereafter filed with DCF against Plaintiff. Pl. Local Rule 56(a)(2) Statement ¶ 5. Plaintiff was placed on paid administrative leave during the investigation, effective May 7, 2013. Pl. Local Rule 56(a)(2) Statement ¶ 6; Defs. Ex. 3. Initial efforts to take a required investigatory interview with Plaintiff regarding the incident were unsuccessful. *See* Defs. Ex. 20. Defendant Ramos sent a letter rescheduling the interview, reiterating that it is was mandatory and stating that failure to attend "may result in disciplinary consequences and unpaid leave." *Id.*

After completing the investigation, in or around late August 2013, DCF substantiated a finding of physical abuse and neglect against Plaintiff and placed Plaintiff on DCF's central registry. *See* Pl. Ex. 5 (Affidavit of Paul F. Meyers ("Meyers Aff.")) ¶¶ 15-17; Pl. Ex. 6 at 1. Shortly thereafter, on September 12, 2013, Plaintiff was informed that termination of his employment was under consideration by letter from Defendant Kishimoto. Pl. Local Rule 56(a)(2) Statement ¶ 12; Defs. Ex. 7. Plaintiff's union counsel followed up with Defendant Kishimoto by letter requesting a statement of reasons for Plaintiff's termination. Pl. Ex. 5 (Meyers Aff.) ¶ 38. After Plaintiff received this statement, Plaintiff's union counsel requested a hearing pursuant to Conn. Gen. Stat. § 10-151, Connecticut's tenure statute for teachers, by letter on September 20, 2013. *Id.* at ¶¶ 39-42.

While the DCF investigation was still pending, on July 9, 2013, Defendant Serrano emailed Plaintiff to inform him that his teaching certificate would expire on October 24, 2013 and that the

Connecticut State Department of Education ("CSDE") had indicated that he had not yet submitted the renewal or re-certification paperwork.  Pl. Local Rule 56(a)(2) Statement ¶ 7; Defs. Ex. 4. Defendant Serrano warned in this email that "[f]ailure to submit your application and all appropriate documentation in a timely manner will impact your employment status with the district."  Defs. Ex. 4 (emphasis in original).  Defendant Serrano also informed Plaintiff that if his "application require[d] the signature of the Superintendent or her designee" he could send it to her and she would email him "so that [Plaintiff] can pick it up and deliver to the [C]SDE."  *Id.*

A CSDE brochure from October 2012 on certification advises that a teacher, such as Plaintiff, "should apply to continue your certificate no earlier than six months and no later than six weeks before the date of expiration of your professional educator certificate."  Defs. Ex. 15a at 2.[5] The CSDE emphasized that the "application must be received in our office BY the expiration date" and "[p]ostmarks are NOT considered."  *Id.* (emphasis in original).  The CSDE informed applicants to "allow 10-12 business days for mail to reach the [CSDE] office."  *Id.* at 1.  The CSDE brochure also detailed the process to continue or renew an expiring certificate, which required a teacher to apply online, or submit by paper (1) an Application Form, ED 179, and (2) if the teacher worked under the prior certificate, a Statement of Professional Experience Form, ED 126, in order to verify successful service as a teacher.  *Id.* at 2.  An Application Form, ED 170, could also be submitted instead of an ED 179 if a teacher was unsure of what forms to submit.  *Id.* at 1.  Throughout the brochure, the CSDE reiterated that submitting an *application* (ED 179 or ED 170) prior to the expiration of a certificate would mean that the "certification is considered in process, pending

---

[5] Plaintiff submitted the same materials as an exhibit, Pl. Ex. 2, and does not contend that these requirements or materials put out by the CSDE changed in any way prior to the time Plaintiff sought to continue his certification in 2013.

materials and final evaluation," thus, as long as the *application* was received prior to the expiration of a teacher's certification, it would be considered timely and additional forms (presumably forms such as the ED 126) could be submitted later. *Id.* at 1-2. The CSDE noted that the "quickest and easiest" way to apply was online and that a teacher could also check the status of existing applications online. *Id.* at 2.

On September 11, 2013, Defendant Serrano informed Plaintiff that his form ED 126 had been completed and was available for pick-up. Pl. Local Rule 56(a)(2) Statement ¶ 11; Defs. Ex. 6. A day later, on September 12, 2013, Victoria Hajdasz, another HBOE employee in the Office of Talent Management, reminded Plaintiff that his certification was going to expire on October 24, 2013 and that he needed to submit his paperwork to the "state dept. of certification." Pl. Local Rule 56(a)(2) Statement ¶ 13; Defs. Ex. 8. On September 25, 2013, Plaintiff responded to Ms. Hajdasz's email asking her about the status of his "paperwork" and stating that he had submitted it "a few weeks ago." Defs. Ex. 8. He emailed Defendant Serrano with a similar message inquiring about an update on his "paperwork" on the same day. Pls. Ex.11 (Deposition of Defendant Serrano ("Serrano Dep.")) at 51:12-24. Defendant Serrano responded to Plaintiff by re-sending her September 11, 2013 email and reiterating that the ED 126 was ready for pick up. *Id.* at 69:19-25; Defs. Ex. 9.

On October 25, 2013, Rosemarie Forzano, another Staffing Specialist in the Office of Talent Management, emailed the CSDE explaining that their records "indicate that Mr. Meyers' physical education certification has expired effective 10/24/2013" and asking for an update on the status of his certification application. Defs. Ex. 10. Robert Szczepanski, an Education Consultant with the CSDE, responded, stating that the records "indicate that Mr. Meyer's [sic] professional educator certificate expired on October 24, 2013" and "[a]ccording to the most recent information available,

Mr. Meyer's [sic] has **<u>NOT</u>** submitted an application for renewal." *Id.* (emphasis in original). He also stated that Plaintiff could apply "without a lapse in certification" if he filed the application that day. *Id.* That very same day, Defendant Durrant sent a letter to Plaintiff stating that because Plaintiff's certification had expired on October 24, 2013, "Hartford Public Schools is forced to separate your services immediately as a physical education teacher at Simpson Waverly School." Defs. Ex. 11. The CSDE's records reflect that as of November 1, 2013 Plaintiff's certification had expired.[6] Defs. Ex. 10a.

Subsequent to Plaintiff's termination, on October 29, 2013, Mr. Szczepanski emailed Plaintiff stating that the CSDE had received his ED 126, but that Plaintiff's "certificate expired on October 24, 2013 and an application had not been filed to date." Defs. Ex. 12; Pl. Local Rule 56(a)(2) Statement ¶ 19. Plaintiff responded by sending his ED 126 again to the CSDE on October 30, 2013. Defs. Ex. 13. At that point, it was explained to him that the ED 126 is "NOT an application form" and he must submit an ED 179. Defs. Ex. 13; Pl. Local Rule 56(a)(2) Statement ¶ 20 (emphasis in original). Plaintiff was informed that if he did so that day, his certification would not lapse. *Id.* Plaintiff filled out the ED 179 and sent it back to Mr. Szczepanski on October 30, 2013. Defs. Ex.

---

[6] Plaintiff makes a number of other factual allegations in his Statement of Disputed Facts regarding his certification application, but these facts are neither supported by an accurate citation nor consistent with the record. For example, Plaintiff contends that he submitted his "recertification application" to Defendants Serrano and Ms. Forzano on September 27, 2013 citing Defendant Serrano's deposition and Plaintiff's Affidavit. Pl. Statement of Disputed Facts ¶ 1. Neither Defendant Serrano's deposition nor Plaintiff's Affidavit support such an allegation. Similarly, Plaintiff, relying on Defendant Serrano's deposition and Plaintiff's Affidavit, alleges that Plaintiff was "led to believe that submission of the ED 126 was all that was required, and by sending that form to Serrano he had finished the application process." *Id.* ¶ 5. Again, neither Defendant Serrano's deposition nor Plaintiff's entire Affidavit completely support this statement. Because Plaintiff has failed to sufficiently support these factual allegations, and the Court cannot find support for these facts elsewhere in the record, the Court will not consider certain of these asserted facts or make any inferences in Plaintiff's favor based on them. This applies to paragraphs 1-2, 4-6, 10, 15-16, and 18 of Plaintiff's Statement of Disputed Facts.

14; Pl. Local Rule 56(a)(2) Statement ¶ 21.  Plaintiff's ED 179 Application was marked received by the CSDE on October 31, 2013 and the CSDE acknowledged receipt on October 31, 2013 via an email to Plaintiff.  Defs. Exs. 14-15; Pl. Ex. 7; Pl. Local Rule 56(a)(2) Statement ¶ 22.

At some point after Plaintiff's termination, Plaintiff's union counsel was informed that Plaintiff did not have a right to a due process hearing on his termination.  *See* Pl. Ex. 5 (Meyers Aff.) ¶¶ 75.  Plaintiff's union counsel on November 5, 2013, challenged this by letter and attached the CSDE's email dated October 31, 2013, and that agency's prior statement about considering Plaintiff's application not to have lapsed.  *Id.* ¶¶ 75-78.  The HBOE never held a hearing on Plaintiff's termination.  *See id.* ¶¶ 78, 85.

On November 5, 2013, the CSDE informed Plaintiff that his ED 126, dated September 11, 2013, needed to be updated because it listed his successful service through May 2013 and he was employed subsequent to that date.  Defs. Ex. 16.  Plaintiff, Defendants McCaskill, and Serrano met in person on November 7, 2013 to discuss Plaintiff's certification.  Pl. Ex. 11 (Serrano Dep.) at 98:24-99:17.  At this meeting, Plaintiff states that Defendant McCaskill asked Defendant Serrano to "fix this mistake," referring to Plaintiff's certification and termination, and Defendant Serrano told Defendant McCaskill to "let it go" because it was "coming from above," to which Defendant McCaskill replied this is "retaliation."  Pl. Ex. 5 (Meyers Aff.) ¶¶ 79-81.  Plaintiff also submitted an updated ED 126 with the correct successful service dates to Defendant Serrano on November 7, 2013.  Pl. Local Rule 56(a)(2) Statement ¶ 24.  The CSDE received the updated ED 126 on November 14, 2013.  Defs. Ex. 17.  Nevertheless, on November 20, 2014, the CSDE denied Plaintiff's application because Plaintiff appeared on DCF's central registry.  Defs. Ex. 18.  The CSDE stated that in accordance with Conn. Gen. Stat. § 10-221d(g), it is required to deny any application

for certification if the person appears on such a registry. *See id.* at 3. The denial letter noted Plaintiff's application for certification date as October 31, 2013 (when the ED 179 was received by the CSDE). Defs. Ex. 18 at 1; Pl. Local Rule 56(a)(2) Statement ¶ 27.

After Plaintiff received the certification denial letter, he requested a review of the decision. Defs. Ex. 19 at 3. Meanwhile, Plaintiff had a two-day hearing in January 2014 on the substantiated finding by DCF of physical abuse and neglect that led to his placement on the central registry. Pl. Ex. 6 at 2. The hearing officer reversed DCF's initial determination and removed Plaintiff from the central registry. *Id.* at 1. DCF notified the CSDE that effective January 9, 2014 Plaintiff had been removed from the central registry. Defs. Ex. 19 at 3. The CSDE then notified Plaintiff by letter that his certification would be processed on February 8, 2014. *Id.* The date of Plaintiff's application on this letter from the CSDE, again, was October 31, 2013. Defs. Ex. 19 at 1. On February 8, 2014, the CSDE retroactively reinstated Plaintiff's full certification, without any lapse, for another five years, October 25, 2013 through October 24, 2018. Pl. Local Rule 56(a)(2) Statement ¶ 28; Pl. Ex. 1. There is no evidence that Plaintiff re-applied for his position with the HBOE subsequent to his reinstatement. Pl. Local Rule 56(a)(2) Statement ¶ 29. For the 2015-16 school year, Plaintiff was a physical education teacher and wrestling head coach for Rocky Hill Public Schools. Defs. Ex. 26.

## II.    Standard of Review

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

moving party must "demonstrate the absence of any material factual issue genuinely in dispute" to be entitled to summary judgment. *Am. Int'l Grp., Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319-20 (2d Cir. 1975)) (internal quotation marks omitted).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute concerning the material fact is genuine. *Id.* All inferences and ambiguities must be viewed in the light most favorable to the nonmoving party. *Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015). However, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party, "must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x 102, 103 (2d Cir. 2013) (citing *Anderson*, 477 U.S. at 248). "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

## III.   Discussion

The Court now turns to the arguments presented by Defendants regarding each of Plaintiff's claims. The Court will address Defendants' arguments regarding Plaintiff's § 1983 claims first, because a viable federal claim is necessary to support this Court's subject matter jurisdiction. While Plaintiff's Amended Complaint, the operative pleading, contains a number of state law claims, none of them falls within this Court's original subject matter jurisdiction, which depends upon the existence of a federal question, 28 U.S.C. § 1331, or complete diversity of citizenship between the

parties, 28 U.S.C. §1332.  A federal district court may exercise supplemental jurisdiction over state law claims other than these, but only if such state claims are included in a complaint which alleges a viable federal claim within the district court's original jurisdiction.  28 U.S.C. § 1367(a).

In the case at bar, Defendants contend that Plaintiff's Amended Complaint fails to allege a viable federal claim.[7]  Specifically, Defendants assert that Plaintiff does not plead a violation of his constitutional rights sufficient to support the § 1983 claims, and that the City of Hartford is not a proper defendant because the HBOE, and not the city, is Plaintiff's employer.  Defendants also contend that regardless of whether Plaintiff was deprived of any constitutional right, the Individual Defendants are entitled to qualified immunity because such rights were not clearly established.  The Court will address each argument in turn.

### A.    § 1983 Claims Against the Individual Defendants (Count One)

"With respect to a section 1983 claim, a plaintiff must prove four elements: (1) actions taken under color of law; (2) deprivation of constitutional or statutory right; (3) causation; and (4) damages." *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 542 (D. Conn. 2006) (citing 42 U.S.C. § 1983), *aff'd*, *Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008).  Plaintiff claims that the Individual Defendants deprived him of certain rights protected by the Fourteenth Amendment, namely: (1) procedural due process afforded under Conn. Gen. Stat. §10-151 and his status as a

---

[7] The Court previously permitted Plaintiff to amend his Complaint, holding that his allegations of the two federal claims were sufficient to withstand a motion to dismiss.  Doc. 27. That earlier ruling was based, in large part, upon a number of allegations in the Amended Complaint that the Court was required to accept at that stage as true, and upon allegations that Plaintiff has abandoned or failed to fully support at this summary judgment stage, as explained throughout the text of this Ruling.  As summarized in Part II, the standard of review in summary judgment is quite different from that on a motion to dismiss.

tenured teacher,[8] (2) equal protection of the laws, and (3) substantive due process. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Doc. 41-1 ("Pl. Br."), at 4-14; Am. Cmplt. ¶¶ 45, 78-83.

### 1.    Procedural Due Process (Property Interest)

Defendants argue that Plaintiff cannot sustain any cause of action based on alleged violations of his procedural due process rights because he was not a certified teacher at the time of his termination, and consequently had no property right or interest protected by the due process clause of the Fourteenth Amendment. Defs. Br. at 7-10.[9] Defendants assert that the Court is presented with a solely legal issue—whether a teacher with an expired certification has a property interest in his or her continued employment. *Id.*

Plaintiff makes two principal arguments in response. First, Plaintiff asserts that Defendants' argument that he lacked a property interest is based entirely on a genuinely disputed material fact, namely that Plaintiff was not certified at the time of his termination, or was not, at the very least, in the process of renewing his certification. Pl. Br. at 4-12. Therefore, Plaintiff's argument concludes, this genuine factual issue precludes summary judgment for Defendants on this claim,

---

[8] To the extent Plaintiff is making alternative claims based on Conn. Gen. Stat. § 17a-101k, *et seq.*, Plaintiff has abandoned such claims by failing to respond to Defendants' arguments seeking summary judgment on them, *see* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, Doc. 37-1 ("Defs. Br.") at 11. As such, Defendants are entitled to summary judgment on any such abandoned claims. *See DeMoss v. Norwalk Bd. of Educ.*, 21 F. Supp. 3d 154, 172 (D. Conn. 2014) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (quoting *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 305 (D. Conn. 2009) (internal quotation marks omitted)).

[9] Defendants' Brief asserts arguments against Plaintiff's Count One claim on behalf of all Defendants. For this reason, the Court refers to arguments made as being made by all Defendants. However, as noted *supra* n.2, the Court will consider Plaintiff's Count One claims as only being made against the Individual Defendants.

even if Defendants' argument regarding the legal impact of an expired certification is correct.  *Id.* Second, Plaintiff argues that, regardless of his certification status at the time of his termination, he had a property interest in his continued employment as a tenured teacher and that he could not lose that status.  Pl. Br. at 5-8.[10]

The Court first addresses Plaintiff's argument regarding whether there is a genuine issue of fact as to the status of his teaching certification at the time of termination.  Then the Court turns to the legal question of the implication, if any, that an expired certification has on a teacher's reasonable expectation of continued employment in Connecticut.

        a.       **Expiration of Plaintiff's Certification**

Defendants urge that the record shows "unequivocally" that Plaintiff did not submit the ED 179 to renew his certification until October 31, 2013, seven days after his certification had expired. Defs. Br. at 10.  Thus, their argument proceeds, Plaintiff was not a certified teacher when he was terminated, and he had no pending application with the CSDE.  *Id.*

Plaintiff disputes that characterization of the facts, arguing that (1) the Individual Defendants are responsible for any lapse in Plaintiff's certification, since they conspired to avoid Plaintiff's tenure protections and terminate his employment; and (2) Plaintiff's certification application was in fact pending at the time of his termination.  *Id.* at 4-11.

The record reflects that Plaintiff's certification expired on October 24, 2013, through no fault of Defendants or any of them.  There is no genuine dispute about that fact.  Plaintiff, despite his

---

[10] In addition, Plaintiff cursorily objects to any "new arguments made in the defendants' Reply Brief" in a footnote in his Sur-Reply briefing, Doc. 48 at 1 n.1.  Although Defendants cited additional case law in their reply briefing regarding Plaintiff's procedural due process claim, the Court does not consider any arguments made by Defendants to be "new," and accordingly considers them.

repeated assertion that a dispute exists, has failed to demonstrate any basis in the record which supports the assertion.  The CSDE confirmed via email to the HBOE on October 25, 2013 that Plaintiff's certification had expired on October 24, Defs. Ex. 10, and that Plaintiff had "**NOT** submitted an application for renewal" as of that date, *id.* (emphasis in original).  Consequently, it is not surprising that as of November 1, 2013, the CSDE's records noted Plaintiff's certification as "expired," Defs. Ex. 10a.  To reiterate:  Although the CSDE remarked in its October 25 emailed response to an inquiry by the Office of Talent Management that Plaintiff could still apply "without a lapse in certification," Defs. Ex. 10, that email also stated unequivocally that Meyers' certificate had expired on October 24, and that, contrary to Plaintiff's present contentions, as of that date no application on his behalf was pending or had been received by the CSDE.  In brief, the CSDE's contemporaneous communications could not have been more clear that Plaintiff's application was not pending on the pertinent dates, and his certificate had expired on October 24.  By the same token, the CSDE also repeatedly noted the date of Plaintiff's certification application as October 31, 2013 in correspondence with Plaintiff.  Defs. Exs. 18, 19.  Plaintiff's contentions on the present motion that these events occurred on different dates find no support in the admissible evidence in the record.

Plaintiff professes the belief that the CSDE email on October 25, 2013 proves his "application was incomplete" at the time his certification was to expire on October 24, and that subsequent correspondence between the CSDE and Plaintiff demonstrate that Plaintiff needed only the ED 126 to complete his application.  Pl. Br. at 5.  Plaintiff asserts that Defendants "held up" this form and that is what caused Plaintiff's certification to lapse.  *Id.*; *see also* Pl. Ex. 5 (Meyers Aff.) ¶¶ 45-56.  Plaintiff, in his Affidavit, states that he completed and turned in the ED 179 to Defendant

Serrano on August 26, 2013.[11]  However, Plaintiff's version of the facts is not at all supported by the record before this Court.

First, Plaintiff repeatedly confuses the ED 179, which is required to start a certification renewal application and create a "pending" application (as well as an "incomplete" application as opposed to an "expired" one), with an ED 126, an additional form requiring input from Plaintiff's employer which, although required to evaluate a certification renewal application, does not appear to be necessary to characterize an application as "pending."[12]  *See* Defs. Ex. 15a; Pl. Ex. 2.  The record, and the CSDE's interactions with Plaintiff, clearly reflect this fundamental difference, which Plaintiff wholly ignores.  When the CSDE actually received the ED 126 from Plaintiff on October 29, 2013, the CSDE informed Plaintiff that despite receiving this form his "certificate expired on October 24, 2013, and *an application* has not been filed to date." Defs. Ex. 12 (emphasis added).  When Plaintiff attempted to send the ED 126 again in response to this notice, the CSDE informed him that an ED 179 was required, stating explicitly that the ED 126 "is NOT an application form." Defs. Ex. 13 (emphasis in original).  Thus, even if Defendants had not "held up" the ED 126 as Plaintiff alleges and Plaintiff had submitted the ED 126 on time, it would not have prevented the expiration of Plaintiff's certification because no application would have been considered pending.

---

[11] This statement is directly contradicted by Plaintiff's Amended Complaint ¶ 55 which states Plaintiff submitted it to *the CSDE* on this date.

[12] Plaintiff's statements and arguments are based almost entirely on fundamental misunderstandings and/or misrepresentations about the record.  For example, Plaintiff states that the "CSDE sent out an email on October 31, 2013 stating that plaintiff needed the ED 126 Form (that defendants' held up) submitted to complete his application and that he 'was not at risk of lapse.'" Pl. Br. at 5.  However, as detailed in Part I, on November 5, 2013 the CSDE informed Plaintiff that he needed an updated ED 126 Form, Defs. Ex. 16, but prior to that earlier emails sent from the CSDE (on October 29 and 30) noted that it had received Plaintiff's ED 126, but needed an ED 179 application to consider the application filed and pending, Defs. Exs. 12, 13, which Plaintiff thereafter filed.

This fact is of no relevance to the determinative issue of whether Plaintiff's application actually expired on October 24, 2013.

Second, as a general matter the CSDE is responsible for the certification of all teachers within the school system. Each individual teacher is personally responsible for his or her particular certification: a responsibility that does not fall upon the HBOE or any of the Defendants. Defs. Ex. 15a; Pls. Ex. 2. Defendant Serrano at the HBOE assisted individual teachers and professionals with certification issues by sending out reminders about upcoming expirations of certifications and filling out a portion of the ED 126 as necessary. Pl. Ex. 11 (Serrano Dep.) at 43:12-23, 45:14-30, 58:5-59:1.[13] Defendant Serrano and Ms. Hajdasz, both employees of the HBOE, informed Plaintiff that he had to submit his renewal certification paperwork to the CSDE and/or that he had pick up the forms in order for him to submit them. Defs. Exs. 4, 6, 8-9. Even if Plaintiff had submitted the ED 179 to Defendant Serrano, that would not have prevented the expiration of his certification or allowed the CSDE to view his application as pending. He was required to submit that form to the *CSDE*—not the HBOE.

Finally, Plaintiff, in his Affidavit, claims that he submitted all "paperwork" to the CSDE. *See* Pl. Ex. 5 (Meyers Aff.) ¶ 46 (Plaintiff "always cooperated and filed any and all paperwork to both the [CSDE] and the Hartford School District for re-certification"); *id.* ¶ 47 (Plaintiff worked

_____

[13] Plaintiff makes a number of allegations about Defendant Serrano and the HBOE in his Local Rule 56(a)(2) Statement, including that Defendant Serrano at her deposition was not credible, that she coordinated with the CSDE regularly on certification issues, and that it was her responsibility to ensure each teacher's certification was up to date. *See* Pl. Local Rule 56(a)(2) Statement ¶ 38. The only evidence Plaintiff cites for these conclusions is Defendant Serrano's deposition. However the Court, having reviewed that deposition, finds that Defendant Serrano's testimony fails entirely to support Plaintiff's conclusory allegations. Accordingly the Court is not required to accept them, either as evidence disputing Defendants' stated facts or as support for Plaintiff's argument that there is a genuine dispute about Plaintiff's certification.

"against a difficult series of obstacles and poor communication by defendants" to provide documents for the renewal of his certification).  Plaintiff's averments are conclusory, devoid of all details, and unsupported by admissible evidence.[14]  The Court is not required to accept conclusory statements or mere speculation at the summary judgment stage.  *See Cifarelli*, 93 F.3d at 51.

Plaintiff has failed to demonstrate a genuine issue of material fact as to whether his certification expired on October 24, 2013.  Even if I draw every reasonable inference in Plaintiff's favor, as Rule 56 practice requires me to do, the evidence and lack of evidence on this record combine to compel the finding, which I make, that Plaintiff's certification as a teacher expired, through no fault of Defendants or any of them, on October 24, 2013.

The Court must now determine the legal implication of Plaintiff's expired certification and its impact on Plaintiff's procedural due process claim.

**b.      Impact of the Expired Certification**

To sustain a constitutional claim for deprivation of procedural due process—a claim of a lack of adequate notice and a meaningful opportunity to be heard—under the Fourteenth Amendment, "a plaintiff must 'first identify a property right, second show that the state has deprived him of *that* right, and third show that the deprivation was effected without due process.'" *Fletcher v. City of New Haven*, No. 11-00708, 2012 WL 1032967, at *2 (D. Conn. March 27, 2012) (quoting *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990)) (emphasis in original).  "Property interests, of course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

---

[14] As one example, it is unclear to the Court if Plaintiff is stating that all paperwork was filed with the CSDE prior to or after October 24, 2013, when his certification was to expire.

For constitutional purposes, this is a limited concept: "the mere violation of a state law does not automatically give rise to a violation of federal constitutional rights." *Zahre v. Town of Southold*, 48 F.3d 674, 682 (2d Cir. 1995). In the case at bar, Plaintiff Meyers charges various Defendants with violating Connecticut statutes and local rules promulgated by the HBOE with respect to the hiring, retention and disciplining of public school teachers. One may assume without deciding that these charges are well founded; nonetheless, they do not suffice to state a federal constitutional claim. The Supreme Court expanded upon that concept in *Roth*: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of *entitlement* to it." 408 U.S. at 577 (emphasis added). If state or local law or practice confer upon an individual an entitlement to the position or benefit in question, that individual has a *protectable* interest for purposes of constitutional analysis, which is to say, an interest the Constitution protects. Failing that element, a plaintiff does not state a constitutional claim, however sincere, heartfelt or even reasonable his sense of aggrievement may be.

In the case at bar, Plaintiff Meyers's procedural due process claim depends on the existence of a property right in his continued public employment as a teacher. *See Ritz v. Town of E. Hartford*, 110 F. Supp. 2d 94, 102 (D. Conn. 2000). "Plaintiff has the burden of proving a legitimate, enforceable claim of entitlement to his continued employment." *Id.* The Court looks to Connecticut state law to determine whether Plaintiff had a protectable property interest at the time of his termination.

It is well established that Conn. Gen. Stat. § 10-151 creates a constitutionally protected property interest in continued employment for Connecticut teachers with tenure. *See Mirabilio v. Regional Sch. Dist. 16*, 761 F.3d 212, 213-14 (2d Cir. 2014); *Chisolm v. Ramia*, 639 F. Supp. 2d

-18-

240, 244 n.2 (D. Conn. 2009); *Rado v. Bd. of Educ.*, 216 Conn. 541, 555 (1990).[15]  Neither party

disputes this fact.  The question presented here, apparently one of first impression, is whether a

teacher whose certification expires is no longer considered a "teacher" for the purposes of § 10-151,

and consequently no longer has a reasonable expectation of continued employment (and a property

interest protected by the Constitution) because the tenure statute no longer applies to the teacher.

By the statute's own terms, only a "teacher," as defined in § 10-151, is entitled to tenure and

the rights that accompany that status.  A "teacher" is defined as "each *certified* professional

employee below the rank of superintendent employed by a board of education for at least ninety

calendar days in a position requiring a certificate issued by" the CSDE.  Conn. Gen. Stat. § 10-

151(a)(2) (emphasis added).  Thus, § 10-151 makes certification a requirement to being considered

a "teacher," and a requirement for any "teacher" to obtain tenure.  *See Cimochowski v. Hartford*

*Public Schools*, 261 Conn. 287, 292 (2002) (holding that an individual must satisfy three

requirements to be considered a "teacher" under § 10-151 and entitled to tenure, including that "the

employee must be certified and employed by a board of education for at least ninety days").  Further

underscoring this requirement, Conn. Gen. Stat. § 10-145 generally prohibits the employment of,

and the payment of a salary to, any teacher who does not possess a valid teaching certificate.  Conn.

Gen. Stat. § 10-145(a).  The Connecticut Supreme Court has affirmed this reading of the statute (§

10-151).  In *Ames v. Board of Education Regional School District 7*, the court held that a teacher

who lacked the appropriate certification "had no legal status as a teacher during" the period in which

---

[15]  Section 10-151(d) provides that "[p]rior to terminating a [tenured teacher's employment] contract," the school superintendent must give the teacher "a written notice that termination of such teacher's contract is under consideration" and a hearing if the teacher requests it.  In *Mirabilio,* the Second Circuit held that because the reduction of a tenured teacher's employment from full time to half time did not constitute a "termination" of employment, these statutory requirements were not implicated.  761 F.3d at 214.

he was employed as a teacher without certification.  167 Conn. 444, 445-48 (1975).  The court

concluded that the teacher was not entitled to tenure status or to judicial review of his termination,

because his employment without certification was "contrary to law" and could not count toward

tenure.  *Id.* at 448.

It follows that, based upon a plain reading of the statute and the *Ames* decision, a teacher who

is not certified and whose employment would be "contrary to law" could not have a reasonable

expectation in continued employment and, it necessarily follows, no longer has a property interest

protected by the Constitution.  District Judge Droney (as he then was) recognized as much when he

observed that it is "highly unlikely that [a teacher] could have any property interest in maintaining

even a tenured position if he did not make reasonable efforts to remain in compliance" with newly

applicable certification requirements.  *Sutton v. Hughes*, No. 06-1333, 2009 WL 2208080, at *11

(D. Conn. July 22, 2009).[16]  This result is consistent with decisions from other jurisdictions that have

addressed similar issues.  The Fifth Circuit in *Nunez v. Simms*, 341 F.3d 385, 390-92 (5th Cir. 2003),

held that a public school teacher whose certification lapses has no protectable property interest in

continued employment because such a teacher was no longer in compliance with her contract and

state law.   Similarly, the Eastern District of Pennsylvania in *Moiles v. Marple Newtown School*

*District*, recognized, albeit in dicta, that "upon the lapsing of a professional certificate, a public

---

[16] In *Sutton*, the Connecticut teacher's tenure was derived from a collective bargaining
agreement that supplanted the statutory tenure provisions.  2009 WL 220808 at *11.  The
bargaining agreement contained no provision limiting a tenured teacher's vested property interest
in employment, and the Court relied on § 10-145 and the legitimate objectives of certification
requirements in reaching the conclusion that a teacher may not have a property interest without
taking reasonable steps to maintain his or her certification.  *See id.*  By contrast, §10-151 does
contain such a limiting provision in its definition of "teacher," which makes this case a stronger
one for holding that a teacher with an expired certificate lacks a constitutionally protected
property interest.

school employee immediately loses professional employee status," is not entitled to any procedural protections guaranteed to such professionals, and has "no property interest in his continued employment." No. 01-4526, 2002 WL 1964393, at *7-8 (E.D. Pa. Aug. 23, 2002).[17]

Moreover, a legislature generally has the power to impose constraints on the way in which vested property rights are used, or to condition the continued retention of vested property rights on the performance of certain affirmative duties. *See Conn. Educ. Ass'n, Inc. v. Tirozzi*, 210 Conn. 286, 296-97 (1989) (citing *United States v. Locke*, 471 U.S. 84, 104 (1985)). The constraint or duty imposed must be reasonable and designed to further legitimate objectives. *Id.* Teacher certification undeniably furthers legitimate objectives of the state in employing only qualified professionals. The requirement that a teacher be certified in order to obtain and retain tenure status as expressed in § 10-151, and the protections such status offers, are reasonable.

To sum up on this issue: Whether a teacher possesses a property interest in his or her employment, and is thereby entitled to certain procedural protections, hinges on his or her status as a "teacher" (meaning a "certified professional employee") pursuant to § 10-151 of the Connecticut statute. A teacher who is not certified "ha[s] no legal status," *Ames*, 167 Conn. at 448, and

---

[17] Courts in New York have held that a hearing is required prior to the termination of a tenured teacher for failure to adhere to certain regulations regarding certification. *See, e.g.*, *Kobylski v. Agone*, 234 N.Y.S.2d 907, 915-16 (N.Y. Sup. Ct. 1962), *aff'd* 19 A.D. 761 (N.Y. App. Div. 1963). The tenure statute addressed by that decision did not contain, as is the Connecticut case at bar, the limiting principle built into the definition of tenure, namely, the requirement of certification. Similarly, a court in California held that a teacher's employment did not automatically terminate, and the teacher did not lose tenure, upon the lapse of a credential when the credential would have absolutely been given to the teacher had he applied and it required "nothing more than the technicality of application." *Mass v. Bd. of Educ. of San Francisco Unified Sch. Dist.*, 61 Cal.2d 612, 619-20 (1964). The certification sought by Plaintiff, however, was not a mere "technicality" and could be denied by the CSDE. These decisions are inapplicable to the relevant Connecticut statute, and Plaintiff cites no case contrary to the decisions cited in text.

accordingly cannot have a reasonable expectation of continued employment or a protected property interest in his or her employment, either under state law or *a fortiori* under the federal Constitution.

Because there is no genuine issue concerning the material fact that Plaintiff's teaching certification expired on October 24, 2013, the Individual Defendants are entitled to summary judgment on Plaintiff's § 1983 claims based on procedural due process violations resulting in the deprivation of a property interest owned by Plaintiff.[18]

If the tenor and substance of Plaintiff's communications with these public agencies left him uncertain or confused about the certification process, that is regrettable and unfortunate. However, given the termination date of October 24, 2013, known to all parties, Plaintiff bore the responsibility

---

[18] Plaintiff appears, without reliance on any case law, to argue that he had a property interest in his employment, based on the lack of notice that an expired certificate would lead to the termination of a tenured teacher's employment, and alternatively on past practices of the HBOE not to terminate such teachers. *See* Pl. Br. at 7, 10-11. Plaintiff offers no proof in support of either theory. As for notice to teachers of the importance of renewing a certificate about to expire, the CSDE's October 2012 brochure gave sufficient advice to teachers paying attention to its contents. As for the HBOE's asserted practices, there have been cases where a government employer's failure to conform to past practices rose to the level of a cognizable property interest, *see Gugliotti v. Miron*, No. 08-442, 2010 WL 3025223, at *9-10 (D. Conn. July 30, 2010) (describing two such cases). However, Plaintiff in this case has not offered any evidence demonstrating the HBOE's past practices regarding the expiration of a teacher's certification or the mention of any such practices to Plaintiff in the record before the Court. Plaintiff relies on one email where Ms. Forzano stated that the HBOE may, when waiting for additional information from the CSDE, wait 30 days to terminate a teacher. Pl. Br. at 10-11; Pl. Ex. 8. Plaintiff also argues that Defendant Serrano could not identify any teacher terminated because of a lapse of certification. *See* Pl. Br. at 12. Despite Plaintiff's representations, Defendant Serrano stated exactly the opposite, testifying that, in the short period of her employment, she had been involved with the termination of one employee for an expired certification, Pl. Ex. 11 (Serrano Dep.), at 96:5-97:24 and union flyers, Defs. Ex 24, although dated, demonstrate that Plaintiff's union informed its teachers that they could be terminated immediately if their certification expired. This record is insufficient to show a "course of conduct," *see Gugliotti*, No. 08-442, 2010 WL 0325223, at *10, at the HBOE to wait 30 days when not awaiting any additional information from the CSDE to terminate a teacher. It is also insufficient to show any reasonable reliance by Plaintiff upon any such alleged policies sufficient enough to constitute a property interest that would be protected under state law. *See id.*

of working with the CSDE in order to achieve a timely renewal.  The record does not contain evidence sufficient to create a genuine issue as to whether any Defendant did anything less than or different from what they were required to do.  The failings to understand and to act, as the process of certification renewal went forward and eventually came to nothing, were those of the Plaintiff. Under Connecticut law, Plaintiff had no reasonable expectation of continued employment once his certification expired, which it did without fault of Defendants (or any HBOE employees) on October 24, 2013.  From that point forward, Plaintiff lacked any property interest protected by the Constitution.  The Individual Defendants are entitled to summary judgment on this due process claim.

### 2.     Procedural Due Process (Liberty Interest)

In Plaintiff's opposition papers, Plaintiff asserts in cursory fashion that he is making a "stigma-plus" claim for the deprivation of a liberty interest pursuant to *Paul v. Davis*, 424 U.S. 693 (1976).  Pl. Br. at 11-12.  Plaintiff asserts that by firing him after suspending him and placing him on the DCF child abuse registry, it appeared that Defendants had terminated him for abusing a child, which made his future employment difficult.  *Id.*[19]  However, Plaintiff has failed to demonstrate the required elements to support a stigma-plus claim.  To the extent that Plaintiff can be regarded as formally pleading such a claim, the Individual Defendants are entitled to summary judgment

---

[19]   Plaintiff also argues that his future employment was further complicated by the fact that Defendants had refused to rehire him once his certification was renewed on "January 28, 2014."  Pl. Br. at 12.  The Court notes that Plaintiff admitted as a fact that "[s]ubsequent to February 8, 2014, there is no evidence that the plaintiff reapplied for his position with the HBOE."  Pl. Local Rule 56(a)(2) Statement ¶ 29.  Plaintiff also admitted that his certification was not reinstated and renewed until February 8, 2014.  *Id.* ¶ 28.  Plaintiff's reference to January 28, 2014 as the date of reinstatement appears to be in error.  Based on these admitted and undisputed facts there is no issue of fact as to whether Plaintiff ever sought and was denied reinstatement subsequent to his re-certification.  The Court concludes that Plaintiff's argument on this point is not supported by the record.

rejecting it.

A "stigma-plus" claim is one "brought for injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest [such as the loss of employment] or property right (the plus), without adequate process." *Segal v. City of New York*, 459 F.3d 207, 209 n.1 (2d Cir. 2006) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)) (internal quotation marks omitted). To establish a stigma-plus claim, a plaintiff must establish that: (1) the government made stigmatizing statements calling into question plaintiff's good name, reputation, honor, or integrity; (2) such stigmatizing statements were made public; and (3) the statements were made concurrently with, or in close temporal proximity, to plaintiff's dismissal from employment. *See Segal*, 459 F.3d at 212-13.

In the case at bar, Plaintiff points to no specific examples of any stigmatizing statements. The Court is left without any specific guidance as to what these alleged statements were. However, the record suggests that Plaintiff may be referring to statements made in the September 2013 letters written to him from the HBOE regarding the possibility of his termination because of the April 2013 incident with the student and the DCF finding.

Such statements are insufficient to maintain a stigma-plus claim because these statements were true at the time they were written and sent to Plaintiff. *See Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (holding that plaintiff need not prove the falsity of the statements but must at least "raise the falsity of these stigmatizing statements as an issue"). It is not disputed that DCF initially made a finding against Plaintiff. While Plaintiff subsequently appealed from and obtained reversal of that adverse finding, the September 2013 letters were accurate at the time the Defendant in question sent them. Plaintiff cites no authority for the proposition that Defendants were under

a duty to take any corrective action other than what DCF did in reversing the finding and removing Plaintiff from the central registry.

In any event, Plaintiff makes no argument and provides no evidence to show that these letters or his placement on the DCF registry were ever made public. *See Skiff v. Colchester Bd. of Educ.*, 514 F. Supp. 2d 284, 296-97 (D. Conn. 2007) (noting that plaintiff failed to allege that a letter from a school to a plaintiff was ever made public), *aff'd*, 316 F. App'x 83 (2d Cir. 2009) (summary order). Plaintiff has even failed to allege that these statements were sent to any recipient other than himself, or that the statements were placed in his employee file and made available to other future employers. *See Abelli v. Ansonia Bd. of Educ.*, 987 F. Supp. 2d 170, 176-77 (D. Conn. 2013) (discussing the requirement of publication and noting that it could be satisfied if shared with one recipient other than plaintiff or placed in plaintiff's employee file).  Importantly, these statements could also be protected by a qualified privilege, *see id.* at 177, an argument made by Defendants, *see* Defendants' Reply Brief in Support of Their Motion for Summary Judgment, Doc 45-1 ("Defs. Reply Br.") at 11, which Plaintiff fails to address at all.

Plaintiff has failed to adequately allege and support the elements necessary to establish a stigma-plus, liberty interest due process constitutional claim.  The Individual Defendants are entitled to summary judgment on Plaintiff's stigma-plus claim.

### 3.    Equal Protection

Plaintiff also alleges a § 1983 claim based on the Fourteenth Amendment's Equal Protection Clause.  Pl. Br. at 12; Am. Cmplt. ¶ 80.  Defendants argue that Plaintiff has not identified himself as the member of any protected class and Plaintiff is asserting a "class of one" equal protection claim, which is not cognizable in the public employment context.  Defs. Br. at 12-13.  Plaintiff's response is to assert that he has stated a claim based on the fact that he was not afforded the same

process as other teachers, and that Defendant Serrano could not identify anyone else treated in the manner plaintiff was treated.[20]  Pl. Br. at 12.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  This clause is most commonly used to bring claims alleging discrimination based on a plaintiff's membership in a protected or vulnerable class.  *Id.* Plaintiff has not sought to establish that he (1) is a member of any protected class and (2) was treated differently because of his membership in any protected class.  One must assume, therefore, that Plaintiff intends to assert an equal protection claim based on a class-of-one theory.

To prove a class-of-one theory of equal protection claim, Plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010).  However, the "class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 598 (2008) ("[R]ecognition of a class-of-one theory of equal protection . . . is simply contrary to the concept of at-will employment," *id.* at 606); *see also Valenti v. Torrington Bd. of Educ.*, 601 F. Supp. 2d 427, 440 (D. Conn. 2009) ("[S]ince Valenti is a public employee with the school district, his class of one theory, that he was intentionally treated differently, is not available.") (citing and quoting *Engquist*, 553 U.S. at 606).  Therefore, Plaintiff has no basis to assert any such claim in this case.

Because Plaintiff has not identified himself as a member of any protected class and cannot assert a class-of-one equal protection claim, the Individual Defendants are entitled to summary

---

[20] As discussed *supra* n.18, Plaintiff's assertions regarding Defendant Serrano's deposition regarding this issue are inaccurate and not supported by her deposition testimony.

judgment on Plaintiffs § 1983 claim based on equal protection violations.[21]

### 4.        Substantive Due Process

Finally, Plaintiff asserts a § 1983 claim based on alleged violations of his substantive due process rights.  Defendants argue that they are entitled to summary judgment on such a claim because Plaintiff has not alleged conduct so egregious or outrageous that it "shock[s] the contemporary conscience," and Plaintiff has not alleged a right worthy of due process protection. Defs. Br. at 14-17.  Plaintiff responds that he was subject to "malicious and outrageous conduct" by Defendants related to his termination and the stigma accompanying it because of the DCF charges. Pl. Br. at 13-14.[22]

Substantive due process "protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'"  *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  To sustain a substantive due process claim, Plaintiff must prove that "(1) [he] had a valid property interest [in his employment and reputation]; and (2) 'defendants infringed on that property right in an arbitrary or irrational manner.'"  *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007)).  Only the most egregious conduct can be said to be arbitrary or irrational, and such

_____

[21] Plaintiff could also be alleging a "selective enforcement" equal protection claim, which is treated (at least formally) as a separate claim in the Second Circuit.  *See Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011).  Even if Plaintiff were alleging such a claim, the result would be no different.  *See Valenti*, 601 F. Supp. 2d at 439-40.

[22] The Court notes that Plaintiff's opposition is generalized and does not address or point to any specific conduct of each of the Individual Defendants as malicious or outrageous.  *See* Pl. Br. at 13-14.

action must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Grasson v. Bd. of Educ. of Town of Orange*, 24 F. Supp. 3d 136, 146 (D. Conn. 2014) (quoting *Bolmer v. Oliveira*, 594 F.3d 134, 142 (2d Cir. 2010)) (internal quotation marks omitted).

"It is well settled that, where the alleged right cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply." *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) (citing and quoting *Reno v. Flores*, 507 U.S. 292, 303 (1993)) (internal quotation marks and ellipses omitted). "Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Courts must "exercise the utmost care" when defining and developing rights in this area. *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)) (internal quotation marks omitted).

In essence, Plaintiff is claiming that he had a property or liberty interest arising through his tenure rights and in his continued public employment. *See* Pl. Br. at 13 ("[P]laintiff possessed a property and liberty interest in his public employment."). However, Plaintiff ignores that courts have "distinguished the rights or interests that provide the basis for substantive and procedural due process claims, and a far narrower range of such rights or interests are protected under the former." *Grasson*, 24 F. Supp. 3d at 149. Moreover, "state-law contractual rights, without more, are not worthy of substantive due process protection." *Id.* (quoting *Tessler v. Paterson*, 451 F. App'x 30, 32-33 (2d Cir. 2011)) (internal quotation marks omitted). "Indeed, interests related to employment are generally not protected under substantive due process because they do not implicate fundamental rights, such as 'the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life.'" *Id.* (quoting *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S.

194, 198 (1978)).

Plaintiff provides no explanation or analysis to demonstrate why his claimed interests support a substantive due process claim. On the contrary: The rule of these cases is that Plaintiff's interest in continued public employment, while certainly understandable in human terms, is not on its own sufficient to support a substantive due process claim.

Even if, contrary to this conclusion, Plaintiff's interests were protected by substantive due process, the Defendants' alleged conduct cannot possibly be characterized as "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," the demanding language used by the Supreme Court in *County of Sacremento v. Lewis*, 523 U.S. 833, 847 n.8 (1998), and reiterated by the Second Circuit in *Bolmer v. Oliveira*, 594 F.3d at 142. Plaintiff asserts that Defendants' conduct was egregious because they had no legitimate basis to fire Plaintiff, having instead concocted a scheme to subvert his due process rights. Although Plaintiff's termination the day after his certification expired may seem to some to be harsh, these Individual Defendants, public servants themselves with their own areas of responsibility, had a legitimate basis to terminate Plaintiff's employment, based upon the expiration of his certification and the wording of the governing Connecticut statute.

Defendants' conduct bears no resemblance to that of the defendants in the case relied upon by Plaintiff, *Velez v. Levy*, 401 F.3d 75, 93-94 (2d. Cir. 2005). In *Velez*, the plaintiff alleged that the defendants had "maliciously fabricated and disseminated falsehoods in a common effort to deprive plaintiff of her job" for no reason other than to "oppress" her, "cause her injury," and did so without any other legitimate purpose. The defendants in *Velez* acted without any legitimate purpose and took malicious actions to deprive the plaintiff of her job. On the evidentiary record on the present motion in this case, that cannot be said of these Individual Defendants.

-29-

For these reasons, the Individual Defendants are entitled to summary judgment on Plaintiff's § 1983 claim based on a substantive due process violation.

### 5.    Qualified Immunity

Alternatively, Defendants argue that the doctrine of qualified immunity shields each of the Individual Defendants from civil liability for their individual actions. Defs. Br. at 17-20. Plaintiff argues again that Defendants' argument is based on a disputed fact, whether Plaintiff was a "teacher" within the meaning of Conn. Gen. Stat. § 10-151 at the time of his termination, and that Plaintiff, as a tenured employee, had a clearly established right to certain procedures. Pl. Br. at 14-16. Even if Plaintiff's § 1983 claims based upon procedural due process, equal protection, or substantive due process violations had survived summary judgment—which this Court has concluded they cannot— the Individual Defendants would be entitled to qualified immunity for the claims asserted against them in their individual capacities.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). In determining whether a right is clearly established, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.* (emphasis in original) (internal quotation marks and citations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The conduct at issue here is the Defendants' termination of a tenured public employee without notice and a pre- or post-termination hearing, when that employee has failed to meet his

reasonable, continuing certification requirement mandated by the governing Connecticut statute. I am unable to conclude that *Defendants*' conduct violated *Plaintiff's* rights "without debate." Defendants have identified cases reaching the opposite conclusion in other jurisdictions, at least suggesting that such a right is not "clearly established" and not placed "beyond debate." *See Ashcroft*, 563 U.S. at 741.  By contrast, Plaintiff has not identified any such precedent here, nor has this Court found any case that suggests, much less holds, that Defendants' particular conduct would have violated plaintiff's clearly established constitutional rights.  Accordingly, the Individual Defendants would be entitled to qualified immunity even if Plaintiff had established the deprivation of a constitutional or statutory right sufficient to support his § 1983 claims.[23]

### 6.    Official Capacity Claims

Plaintiff alleges the same § 1983 claims against each of the Individual Defendants in their official capacities.  Am. Cmplt. ¶¶ 7-13.  Defendants argue that these official capacity claims are in effect a suit against the governmental entity, the HBOE, and the Individual Defendants are entitled to summary judgment because Plaintiff has failed to point to any policy, practice or custom of the HBOE that deprived Plaintiff of his constitutional rights.  Defs. Br. at 25-26.  Plaintiff responds only by reciting the law regarding official capacity claims.  Pl. Br. at 18-19.

Plaintiff provides no argument in response to Defendants' assertion, and fails to assert any policy, practice or custom of the HBOE that resulted in a deprivation of Plaintiff's constitutional rights.  *See id.*  Instead, Plaintiff appears to confuse his official capacity claims with his claims against the City of Hartford (discussed *infra*, Part III, B) and argues that the City of Hartford is the

---

[23] Having considered this a sufficient alternative basis to grant summary judgment to the Individual Defendants, the Court need not consider Defendants' additional arguments that each individual lacked sufficient personal involvement in the underlying violations to suffice for individual liability, *see* Defs. Br. at 20-24.

correct Defendant and/or that the HBOE should be joined as a Defendant. Pl. Br. at 18-19. Because Plaintiff has failed entirely to respond to Defendants' arguments regarding Plaintiff's claims against each of the Individual Defendants in their official capacities, the Court deems such claims abandoned. *See DeMoss*, 21 F. Supp. 3d at 172. The Individual Defendants are entitled to summary judgment on these claims. *See id.*

**B.** **§ 1983 Claims Against the City of Hartford (Count Four)**

Defendant City of Hartford argues that it is entitled to summary judgment on all claims asserted against it because the HBOE—not the City of Hartford—is Plaintiff's employer, and therefore, Plaintiff has no proper claim against the City. Defs. Br. at 35-37. Defendants urge that "C.G.S. § 10-220 gives a Board of Education (not the City) the authority to 'employ and dismiss the teachers of the schools of such district . . . .'" *Id.* at 35 (quoting Conn. Gen. Stat. § 10-220(a)). Plaintiff does not challenge Defendants' assertion other than by making a vague statement, without citation to any support, that the City of Hartford funds the HBOE. Pl. Br. at 18.

The Court concludes, based on the record before it, that there is no genuine issue of material fact as to whether the HBOE was Plaintiff's employer. *See Prashad v. City of Hartford*, No. 13-01381, Doc. 23 (D. Conn. August 28, 2015) (granting summary judgment to defendants when presented with a similar situation). Accordingly, the City of Hartford is improperly named as one of the Defendants. First, the parties do not dispute that Plaintiff was a physical education teacher at Simpson Waverly School, a public school in Hartford, CT. Second, the parties do not dispute that each of the Individual Defendants in this action were employees of the HBOE. *See* Pl. Local Rule 56(a)(2) Statement ¶¶ 30, 33, 36, 39, and 45 (admitting that each Individual Defendant is employed by the HBOE or supervised by an HBOE employee). Third, Plaintiff is seeking to invoke the provisions of Conn. Gen. Stat. § 10-151, a statute which states that tenure is given only for

"continuous employment for the same *board of education*"  Conn. Gen. Stat. § 10-151(a)(6)(A) (emphasis added), clearly noting the board of education as the teacher's employer.  In addition, Plaintiff admitted as an undisputed fact that "there is no evidence that the plaintiff reapplied for his position with *the HBOE.*"  Pl. Local Rule 56(a)(2) Statement ¶ 29 (emphasis added).  Finally, Plaintiff has provided no evidence that the HBOE is not, in fact, his former employer and that the City of Hartford is his true employer or in someway directly connected to the HBOE sufficient to support the claims against it.  Thus, Defendants' motion for summary judgment for claims asserted against the City of Hartford is granted.[24]

Alternatively, even if the City of Hartford were a proper party before this Court, Defendants' motion fo summary judgment would be granted on Plaintiff's Count Four § 1983 claims based on this Court's analysis of the Count One claims above.  Plaintiff has not demonstrated the deprivation of any constitutional or statutory right sufficient to withstand summary judgment.

---

[24] Plaintiff responds that "[i]f the proper defendant is the HBOE, . . . then the plaintiff will seek leave of the Court to substitute this defendant pursuant to [Fed. R. Civ. P.] 21" and makes a cursory request that the Court join the HBOE.  Pl. Br. at 18-19.  The deadline to join parties passed over a year ago.  *See* Docs. 23, 27.  Once such deadlines have passed any motion under Rule 21 is subject to the good cause standard of Rule 16.  *See Otegbade v. New York City Admin. for Children Servs.*, No. 12-6298, 2015 WL 851631, at *2-3 (S.D.N.Y. Feb. 27, 2015); *see also Faghri v. Univ. of Conn.*, No. 06-01957, 2010 WL 2232690, at *2-3 (D. Conn. June 3, 2010).  "Rule 16(b) was designed to create certainty in pretrial proceedings and ensure that 'at some point both the *parties* and the pleadings will be fixed.'"  *Otegbade*, 2015 WL 851631, at *3 (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000)) (emphasis in original).  Plaintiff makes no effort to explain his lack of diligence or provide any good cause sufficient to permit adding the HBOE as a Defendant at this stage of the litigation, after the discovery deadlines have passed and a summary judgment motion has been filed.  Thus, Plaintiff has not demonstrated the required good cause for his failure to comply with the Court's deadline to amend the pleadings or join a party.  *See Otegbade*, 2015 WL 851631, at *2-3. Moreover, joining the HBOE as a party defendant would be futile, since for the reasons stated throughout in text, Plaintiff cannot state a viable federal claim against that agency.

### C.       State Law Claims Counts Two, Three, Five, Six and Seven

For the reasons stated *supra*, Defendants are entitled to summary judgment dismissing each federal claim Plaintiff alleges in his complaint.  The federal claims, over which this Court has original jurisdiction, are dismissed in the conclusion to this Ruling.

Plaintiff also pleads a number of state law claims in his Amended Complaint.  In the absence of diversity of citizenship between the parties, the Court lacks original jurisdiction over those state claims.  They can be litigated in this Court only if the Court exercises supplemental jurisdiction over them.  A federal district court's supplemental jurisdiction is governed by 28 U.S.C. § 1367.

Section 1367(a) provides that in any case of which the district courts have original jurisdiction, the courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. "   That relationship would exist between Plaintiff Meyers's state law claims and his federal claims if the federal claims remained in the case.  But Plaintiff's federal claims are dismissed as the result of this Ruling.  That brings the case within § 1367(c), which provides that the district courts "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which the court has original jurisdiction."

Section 1367(c) has been interpreted to mean that the exercise of supplemental jurisdiction in the specified circumstances is entrusted to the district judge's discretion, subject to review for abuse.  *See, e.g.*, *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 436 (2d Cir. 2011); *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.").

District judges in this Circuit are bound by Supreme Court and Second Circuit decisions which impose limitations upon the exercise of that discretion.  In *Carnegie-Mellon University v.*

-34-

*Cohill*, 484 U.S. 343, 350 (1988), the Court cited *Gibbs* for the proposition that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." The Second Circuit echoed that rule in *Oneida Indian Nation*:

> [W]e have repeatedly said that if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well. . . . This Court has concluded that declining to exercise jurisdiction after all original-jurisdiction claims have been dismissed is especially appropriate where the pendent claims present novel or unsettled questions of state law.

665 F.3d at 437 (internal quotation marks and citations omitted). That second sentence may resonate in the case at bar, to the extent that Plaintiff's state law claims implicate the effect of the expiration of Plaintiff's teaching certificate upon his entitlement to statutory procedural safeguards. Such a question would require interpretation of the governing Connecticut statutes.[25]

For these reasons, the Court declines to exercise supplemental jurisdiction over the state law claims asserted by Plaintiff Meyers in his Amended Complaint. Those claims will accordingly be dismissed *without prejudice*, a phrase that allows Plaintiff, whose sincerity in the belief he has been treated wrongfully is apparent, to pursue such remedies as may be available to him in the courts of Connecticut.

---

[25] A separate provision in 28 U.S.C. § 1367(c) permits the district court to decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law." Even if Plaintiff's federal law claims had not been dismissed, that provision would nonetheless sanction the Court's declination of supplemental jurisdiction over the state law claims. In this event, however, Plaintiff's federal claims are dismissed, and the operative provision for declining supplemental jurisdiction is found in § 1367(c)(3).

**IV.     Conclusion**

In light of the foregoing, Defendants' motion to for summary judgment is GRANTED as to Counts One and Four of Plaintiff's Amended Complaint.  Plaintiff's remaining state law claims in Counts Two, Three, Five, Six and Seven are DISMISSED WITHOUT PREJUDICE.

The Clerk is directed to enter judgment for Defendants and close this action.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut**
        **November 17, 2016**

_/s/ Charles S. Haight, Jr._

**CHARLES S. HAIGHT, JR.**
**SENIOR UNITED STATES DISTRICT JUDGE**